## 38726. R. W. PAGE CORPORATION v. LUMPKIN et al.

JORDAN, Chief Justice.

The single issue presented is whether and, if so, when and how, trial and pretrial hearings in criminal cases may be closed to the public and to representatives of the news media.

Quite predictably, this issue arises out of a melodrama containing all of the elements that news reporters and their editors know from experience will excite the interest of substantial numbers of their readers, viewers and listeners.[1] Twenty-one-year-old Rebecca Heath was found shot to death beside a road near Columbus, Georgia. She was nine months pregnant at the time of her death. Her husband and his girl friend, who was the daughter of a prominent Virginia family, were charged with arranging for the murder. Charles Owens and Gregory Lumpkin were indicted as the "hit men" hired to do the killing. Her husband, his brother, and his girl friend pled guilty, and Owens and Lumpkin proceeded to trial in the Superior Court of Troup County.

During a hearing on Lumpkin's motions,[2] Lumpkin's trial defense counsel orally, without previous notice to anyone, without particularization of his cause or reasons, and without supporting evidence, moved that the courtroom be cleared of all persons except parties, counsel, and the clerk of court. The trial court summarily granted the motion.

A reporter for the *Columbus Enquirer,* who was present in the courtroom, asked the court to delay the effect of that ruling until he could confer with legal counsel for the newspaper, but the trial court denied this request and everyone present other than parties, counsel and the clerk of court were required to leave the courtroom.

During a subsequent pretrial hearing on motions, members of the general public and representatives of the news media again were

---

[1] It is noteworthy that the dry prose of most judicial proceedings is not deemed "newsworthy" by either the general public or the news media. Most judicial proceedings, even some of considerable importance to the general populace, remain unattended by the public and unreported by the news media. This court has sought to open the doors of Georgia's courtrooms to the public and to attract public interest in all courtroom proceedings because it is believed that open courtrooms are a *sine qua non* of an effective and respected judicial system which, in turn, is one of the principal cornerstones of a free society. See the May 12, 1977, amendment to Canon 3 of the Georgia Code of Judicial Conduct, 238 Ga. 855, and the rules of this court promulgated to allow media access to our hearings while maintaining proper decorum.

[2] Including motions for change of venue and for individual and sequestered voir dire of prospective jurors.

cleared from the courtroom on Lumpkin's motion under similar circumstances and by application of similar procedures.

After the jury had been impanelled, sworn and sequestered, the trial court commenced a Jackson-Denno hearing for the purpose of determining, under the Miranda exclusionary rule, whether or not certain incriminating statements given to the investigating officers should be suppressed because the request for legal counsel was denied.[3] Lumpkin's attorney again requested that the news media representatives be sent out of the courtroom. This defense request arose from the fact that the trial court had decided to disperse rather than sequester the jury at the close of the day's proceedings, a procedure permitted by Georgia law since at this stage of the case the state no longer was seeking the death penalty. Code Ann. § 59-718.1; *Jones v. State,* 243 Ga. 820, 823 (3) (256 SE2d 907) (1979); *Dean v. State,* 238 Ga. 537, 538 (3) (233 SE2d 789) (1977); *Brinks v. State,* 232 Ga. 13, 14 (7) (205 SE2d 247) (1974).

A reporter present inquired of the court whether he might be permitted to remain were he to promise not to print any evidence ultimately suppressed. The district attorney stated his agreement with the reporter's request. The trial court, however, ordered all media representatives to leave or be removed from the courtroom but allowed approximately thirty-five members of the general public, many of whom were friends or relatives of the victim, to remain present throughout the suppression hearing. When some reporters tried to reenter without any of their news-gathering paraphernalia, stating that they sought entry as members of the general public, they were physically restrained and ejected from the courtroom over objections expressed to and denied by the trial court.[4] When this request to reenter the courtroom was denied, this appeal promptly

---

[3] The motion was granted and the statements were excluded on a finding that the investigating officers violated Lumpkin's right to counsel.

[4] No one should ascribe to the trial court an unjust or improper motive regarding these matters. It is quite clear to us, and should be accepted as fact by everyone, that the trial court honestly and sincerely was attempting to perform his constitutional obligation to protect the defendant from prejudicial publicity. Of what value to the defendant would be an application of the Miranda exclusionary rule if tainted evidence never to be heard by the jurors in court were to be read or heard by them while in their homes through the news gathering and publishing efforts of the news media? That more narrow and less harsh means of attaining those results, such as jury sequestration, were not presented to or considered by the trial court as viable alternatives to exclusion of the media representatives from the courtroom, was a natural consequence of the unsettled state of federal and state law regarding the closing of hearings in criminal cases. See, the many and varied decisions of the federal and state courts in this area of the law as reported in Media Law Reporter.

was filed.[5]

We invited briefs from the various news gathering and publishing organizations having a stake in the outcome of this appeal, as well as from those officials who represent the state in criminal proceedings. After consideration of the well-prepared and thought-provoking briefs presented by and in behalf of these officials and organizations, we hold that we have jurisdiction to entertain this appeal, and we reverse the orders and rulings of the trial court for the reasons stated in this opinion.

1. The appeal is not moot because the underlying dispute is " 'capable of repetition, yet evading review.' " Globe Newspaper Co. v. Superior Court, County of Norfolk, 50 USLW 4759, Richmond Newspapers v. Virginia, 448 U. S. 555, 563 (100 SC 2814, 65 LE2d 973) (1980).

2. Direct appeal to this court, rather than a separate proceeding in the trial court[6] is the most judicially economical, swift, and certain means for the protection of the right of the public, hence, of the news media, to be present during judicial hearings in criminal cases. See, WXIA-TV v. Devier, 5 Med. L. Rptr. 2454 (Ga. Supr. Ct. 1980); *City of Kennesaw v. Ravan,* 245 Ga. 226 (264 SE2d 200) (1980); *Darden v. Ravan,* 232 Ga. 756 (208 SE2d 846) (1974).

3. Georgia law, as we perceive it, regarding the public aspect of hearings in criminal cases is more protective of the concept of open courtrooms than federal law. *Ga. Gazette Pub. Co. v. Ramsey,* 248 Ga. 528 (284 SE2d 386) (1981); *Lancaster v. State,* 168 Ga. 470, 475 (4) (148 SE 139) (1929); *Moore v. State,* 151 Ga. 648 (108 SE 47) (1921); *Myers v. State,* 97 Ga. 76, 77 (5), 98 (5) (25 SE 252) (1895); *Lowe v. State,* 141 Ga. App. 433, 435 (233 SE2d 807) (1977); Globe Newspaper Co. v. Superior Court, County of Norfolk, supra; Richmond Newspapers v. Virginia, supra; Gannett Co. v. DePasquale, 443 U. S. 368 (99 SC 2898, 61 LE2d 608) (1979). Although the sixth amendment to our federal constitution (Code Ann. § 1-806) affords the accused a right to a public trial, our state constitution point-blankly states that criminal trials *shall* be public. Const. of Ga. 1976, Art. I, Sec. I, Par. XI (Code Ann. § 2-111).[7] We construe that state constitutional provision to be as applicable to pre-trial, mid-trial,

---

[5] The court additionally entered a "gag order" restraining publication by the news media of certain pretrial matters but this order is not the core of the controversy in the present appeal. As to "gag orders," generally, see, Nebraska Press Assn. v. Stuart, 427 U. S. 539 (96 SC 2791, 49 LE2d 683) (1976).

[6] Such as mandamus, prohibition, or motion to reconsider or modify a closure order.

[7] ". . . shall have . . . a public trial. . . ."

and post-trial hearings as to the trial itself. We see no friction between these state and federal constitutional provisions, properly interpreted, since the objectives of both are identical: access to judicial hearings for the public and fair trials for criminal defendants.

4. The appeal has been presented in terms of balancing the sixth amendment right of the defendant to a fair trial against the first and fourteenth amendment rights of the public to gain access to hearings in criminal cases. This perception is too narrow, since the state or federal governments easily can have an interest in the closing of segments of criminal proceedings in order to protect national security, to protect informers or witnesses for the prosecution or to encourage witnesses to abandon their fears or reluctance to testify and to speak the entire truth. Businessmen, perhaps as victims of the crime for which the defendant is on trial, may have legitimate interests in preserving their trade and business secrets from the general knowledge of the community. We could theorize other circumstances in which neither the federal nor the state constitutional provision regarding public trials should be construed so rigidly as to mandate harm to persons who may be interested in or affected by what transpires during the trial of, or hearings relating to, criminal cases. But the fact of many possible exceptions allowing closure should not be allowed to obscure the extreme importance of the strong presumption favoring the general rule, which is that in Georgia, the criminal trial itself, and all its consequent hearings on motions (pre-trial, mid-trial and post-trial) shall be open to the press and public on equal terms unless the defendant or other movant is able to demonstrate on the record by "clear and convincing proof" that closing the hearing to the press and public is the only means by which a "clear and present danger" to his right to a fair trial or other asserted right can be avoided. A Georgia trial court judge must approach these issues possessed of less discretion than his federal counterpart because our constitution commands that open hearings are the nearly absolute rule and closed hearings the very rarest of exceptions.

In most instances when these rights of the public and the defendant seem to be on a collision course, Georgia trial judges will discover that postponing the hearing on an issue (such as a suppression question) until the jurors are sworn and sequestered for the duration of the trial will prove to be entirely adequate to protect the defendant from prejudice that might result from information reaching the empaneled jurors through the news media. While federal trial court judges are admonished to *consider* jury sequestration (or some other remedy) as an alternative to the closing

of hearings to the public and the press, we now hold that a Georgia trial court judge shall *use* jury sequestration (or some other means) to exclude prejudicial matters from the jury's knowledge and consideration unless for some reason fully articulated in his findings of fact and conclusions of law jury sequestration (or another remedy) would not adequately protect the defendant's right to a fair trial.[8]

5. A motion for closure shall receive no consideration by a trial court unless it is in writing,[9] has been served upon the opposing party, has been filed with the clerk of the court and posted on the case docket (as notice to the press and the public) for at least one twenty-four hour period in advance of the time when the motion will be heard, and unless it alleges grounds for relief with that degree of particularity required under Code Ann. § 81A-107 (b)(1). The motion must be supported at the hearing by the movant by evidence constituting "clear and convincing proof" that no means available other than closure of the hearing will serve to protect the right of the movant. The hearing on the motion shall be open, reported and transcribed.[10] The movant need not be a formal party to the criminal proceedings.[11]

6. Closure orders shall be narrowly drawn and strictly construed in favor of open hearings. Such an order shall only be entered pursuant to written findings of fact fully articulating the alternatives to closure considered by the trial court and the reason or reasons why such alternative would not afford the movant an adequate remedy. These requirements cannot be avoided by agreement between the state and the defendant that the media and public should be barred from the hearing.

7. Any closure order shall provide that the portion of the hearing closed shall be reported and transcribed and made available

---

[8] Other possible means of at least partially ameliorating the impact of prejudicial facts being reported in the media include: (1) change of venue, (2) postponement of the trial, (3) searching voir dire, (4) clear and emphatic instructions to the jury to consider only evidence presented in open court. 427 U. S. at 563-4. Sequestration of the jury for the duration of the trial before all hearings involving possibly prejudicial matters are commenced is the one sure method of avoiding the problem while treading softly upon the rights of the public and the media to attend the trial and its consequent hearings.

[9] Code Ann. § 24-3363.

[10] In camera conferences may be appropriate means to exclude certain sensitive details from general exposure during the hearing. Globe Newspaper Co., supra, fn. 25.

[11] While these rules apply to pre-trial motions, it would be less burdensome for the movant to justify the closure motion in a pre-trial hearing due to the absence of some alternatives at this stage of the proceedings.

to the media and public as soon as the prejudicial effect which caused the closure no longer exists.

8. The right of access of the news media representatives is no greater and no less than any other member of the general public. Richmond Newspapers, supra, 100 SC at 2827, n. 12; 100 SC at 2832-33, n. 2.

9. The authority to exclude the public from a hearing in which vulgar evidence is to be presented, Code Ann. § 81-1006, and the traditional right and obligation of the trial court to maintain dignity and decorum in the courtroom, as by excluding from the courtroom overflow audiences or unruly spectators, are not drawn in question in, or affected by, the present case. Georgia courts and the United States Supreme Court have given little credence to contentions that a hearing was not "public" where, in the interest of fair administration of justice, the trial court has cleared a part of the spectators from the courtroom but has allowed representatives of the news media to remain. *Moore v. State,* supra; *Lowe v. State,* supra; Richmond Newspapers, supra, 27 Cr. L. 3268, n. 18. The presence of news media representatives in a courtroom from which, in the interest of justice, some members of the general public have been excluded, usually will assure that the proceedings will be conducted fairly to all concerned, and discourages perjury and other misconduct by participants, including decisions based on secret bias and partiality. Richmond Newspapers, supra, 27 Cr. L. 3261, 3265. Globe Newspaper Co., supra, fn. 22.

10. This court will expedite on its calendar to the maximum extent feasible appeals and applications pertaining to orders granting closure motions in criminal cases.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 29, 1982.

*Grogan, Layfield, Agnew & Rumer, L. Martelle Layfield, Jr.,* for appellant.

*Arthur E. Mallory III, District Attorney, Harger W. Hoyt, Assistant District Attorney, Marc E. Acree, Zachry & Kirby, Louis J. Kirby, Alfred F. Zachry,* for appellees.

*Rogers & Wells, Richard N. Winfield, David A. Schulz, Debra S. Weaver, Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., David J. Bailey, Elizabeth G. Crosby, Sell & Melton, E. S. Sell, Jr., Susan S. Cole, Hull, Towill, Norman & Barrett, W. Hale Barrett, David E. Hudson, Baker & Hostetler, Bruce W. Sanford, Lee Levine, Brian S. Harvey, Charles T. Shean III, Wayne B. Mangum, J.*

*Dunham McAllister,* amici curiae.