## S91P0499. GIBSON v. THE STATE.
### (404 SE2d 781)

FLETCHER, Justice.

Exzavious Lee Gibson was convicted by a Dodge County jury of murder and armed robbery. He was sentenced to death on the murder conviction and to life imprisonment for the armed robbery. We affirm the conviction and death sentence.[1]

1. The victim operated a family-owned grocery store in Eastman. Late in the afternoon of February 2, 1990, Eastman's chief. of police, driving by the store during a routine patrol, saw a crowd at the front entrance. A man ran to the chief's car and reported there was blood all over the store and no one visible inside. The chief radioed for assistance and then approached the store. The main entrance was locked. A member of the victim's family broke open a side door. The police chief entered the store and discovered the victim's body "behind the counter and blood just totally everywhere."

A man had been seen running away from the store. One of the women in the crowd recognized him and knew where he lived. She accompanied a police officer to the defendant's home. Leaving her in the car, the police officer went to the door, knocked, and asked permission to enter. A woman answered, telling the officer to come in. He opened the door and immediately noticed drops of fresh blood on the floor in the living room. The officer asked the woman if anyone had run into the house. She answered "her grandson" and directed him to a bedroom down the hall. The officer went to the bedroom. Looking from the doorway, he saw bloody money under the bed. The officer went to the bed and looked under it, thinking the defendant might be hiding there, and saw the rest of the money (almost $500) and a wallet. He looked inside the wallet and determined that it belonged to the victim. Looking around, he saw some bloody clothes near a closet which fit the description of the clothing worn by the man seen running away from the store. The officer opened the closet door and found the defendant, "crouched down" and sweating profusely. He was arrested and taken to jail.

An autopsy was conducted on the body of the victim. He had

---

[1] The crime occurred on February 2, 1990. Gibson was arrested the same day. He was indicted February 20, 1990, and tried June 11 through 14, 1990. He filed a motion for new trial on June 21 which was heard on October 22 and denied November 19, 1990. He filed a notice of appeal, and the case was docketed in this court on January 19, 1991. After extensions of time were granted to the parties, the appeal was argued orally on April 8, 1991.

been cut numerous times; some of the cuts were very deep while others were shallow. The autopsist testified that he found 39 "stab and slash and superficial cut wounds on [the victim's] body." The knife blade had broken off in the vertebrae of the victim's neck, severing the victim's spinal cord and immediately paralyzing him from the neck down. In the autopsist's opinion, many of the superficial wounds in the front of the victim's chest and neck were inflicted by what was left of the knife after it had broken off in the victim's neck.

The defendant confessed shortly after he was arrested. He first gave a brief written statement in which he' acknowledged killing the victim, claiming he needed money for drugs. Later that evening, he gave a longer tape-recorded statement, in which he added that he had been in the store earlier that day and had used profanity in the presence of the victim, who had then lectured him about his behavior. The defendant stated that when he returned later, he intended not only to rob the victim but also "to hurt him" because "I didn't like him."

The evidence supports the conviction on both counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Coleman v. Kemp*, 778 F2d 1487 (11th Cir. 1985), the defendant argues the trial court erred by denying his motion for change of venue. We disagree. The *Coleman* case involved a trial in a county subjected to an overwhelming barrage of inflammatory pretrial publicity. The Eleventh Circuit Court of Appeals held that this media inundation gave rise to a presumption of prejudice to Coleman's right to a fair trial in the county in which the crime occurred. The Court noted, however, that "the presumed prejudice standard is 'rarely' applicable." Id. at 1490.

In this case, the defendant offered only three newspaper articles in support of his motion, consisting of a mere 11 lines in one column, 23 lines in another, and 20 in a third. This does not amount to a "barrage" of pretrial publicity as would give rise to a presumption of prejudice.

> Where the presumed prejudice standard does not apply, the defendant can prevail on a motion for change of venue based on excessive pretrial publicity only if he can show actual prejudice "from the jury selection process itself — the voir dire examination and qualification of prospective jurors." *Lee v. State*, 258 Ga. 82, 86 (365 SE2d 99) (1988).

*Isaacs v. State*, 259 Ga. 717, 726 (15) (386 SE2d 316) (1989). The trial court's determination that the defendant had not shown actual prejudice and that the defendant could get a fair trial in Dodge County is supported by the record. There was no error.

3. There is no statutory requirement that the state submit its requests to charge at least 24 hours before trial and the trial court did not abuse its discretion by denying the defendant's motion to compel such submission. We note that the state did not submit any requested charges at trial.

4. The defendant failed to establish any necessity to exclude the news media from the pretrial hearings, and the trial court did not err by refusing to close the pretrial proceedings to the media. See *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982).

5. The defendant contends the trial court erred by denying his motion to suppress physical items — bloody money, bloody clothes, and the victim's wallet — seized from the defendant's bedroom. He contends there was no evidence that the arresting officer was authorized to enter his bedroom and that the defendant's later consent to search, given after he was interrogated, was not preceded by *Miranda* warnings and was induced by an illegal entry into the defendant's room and the defendant's consequent perception that these items would be seized with or without his consent.

The defendant's grandmother not only invited the arresting officer into her home, she told the officer the defendant was "in the far back bedroom" and the officer could "go on back and talk to him." Thus, even pretermitting any question of "hot pursuit," the officer was authorized to enter the defendant's bedroom.[2] *Williams v. State*, 166 Ga. App. 798 (2) (305 SE2d 489) (1983). The defendant's consent, then, was not tainted by an illegal entry. As to his other claim, the evidence shows the defendant was Mirandized at least twice the same evening he gave his consent. Moreover, he executed a written consent to search stating he had "been informed of my constitutional right . . . to refuse to consent to . . . a search" of the premises. His consent to search was not invalid, and there was no error.

6. The defendant complains about the Attorney General's response to his attempt to subpoena information in the possession of witnesses employed by the state crime laboratory. The Attorney General moved to quash the subpoenas, to assess costs, and to find the defendant's attorney in contempt of court for filing the subpoenas. In response, the defendant's attorney, stating he did not wish to "suffer" the court's contempt and had no funds to pay the costs, withdrew the subpoenas. The defendant argues that the state's "bullyboy" tactics "compelled" his withdrawal of the subpoenas and denied him effective assistance of counsel.

The defendant, however, did not withdraw his subpoenas until

---

[2] We note that the defendant does not complain about the legality of his warrantless arrest.

midway through the trial, and then only after being strongly encouraged by the trial court to insist on his subpoenas if he wished, because the possibility of "being fined or . . . having to incur any personal cost in this matter is so remote as to be non-existent."

Only two crime-laboratory witnesses testified. One had not been subpoenaed by the defense, and the other — the autopsist — testified that he had complied with the subpoena and brought to court with him all items in his possession called for by the subpoena.

While we find the threats contained in the motion to quash the subpoenas to be distasteful, we do not find that the defendant was "compelled" to withdraw his subpoenas, or that the State by its action impaired the defense attorney's representation of the defendant.[3]

7. The arresting officer testified that when he entered the defendant's residence and asked his grandmother if anyone had just run through the house, she answered that her grandson had. Next, the officer testified, she asked him, "Is he in any kind of trouble? Has he robbed somebody or something?" The defendant objected and moved for a mistrial. The trial court sustained the objection and instructed the jury to disregard the testimony about what the grandmother had asked the officer. The defendant's motion for mistrial was denied.

The defendant contends the testimony at issue was "pure hearsay" and the trial court erred by denying his motion for mistrial. The denial of the motion for mistrial was not an abuse of discretion. *Farley v. State*, 260 Ga. 816 (4) (400 SE2d 626) (1991).

8. It was not error to admit in evidence pre-autopsy photographs of the victim's body which demonstrated the nature and location of the wounds. *Taylor v. State*, 261 Ga. 287 (6 d) (404 SE2d 255) (1991).

9. The defendant testified at the sentencing phase of the trial that he was using crack cocaine the day of the crime. On cross-examination, the state asked how long the effects of crack cocaine lasted. The defendant answered, "Maybe an hour, hour and a half." The state then asked whether "all these experts" who said the effects of crack cocaine only lasted "about fifteen minutes" did not know "what they're talking about?"

The state withdrew the question after the defendant objected to it, and the jury was instructed to disregard it. The defendant's motion for mistrial was denied. There was no abuse of discretion. *Farley v. State*, supra.

10. The state offered in evidence at the sentencing phase a letter the defendant had written "To The Police" about his "magnificent" escape attempt. The defendant objected on the ground that the letter

---

[3] See *Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990), which discusses a defendant's right to information in the possession of the state crime laboratory.

was "irrelevant" and "interjects another crime, an unindicted crime, into this case, an attempt to escape." These objections were properly overruled. The letter clearly was relevant, *Hicks v. State*, 256 Ga. 715 (19 c) (352 SE2d 762) (1987), and, moreover, testimony about the defendant's escape attempt had already been admitted without objection. See also *Isaacs v. State*, 259 Ga. at 728 (16 b).

The defendant implies in his brief that he had no timely notice that the letter would be admitted in aggravation. See OCGA § 17-10-2. However, lack of notice was not an issue raised at trial, and may not be raised for the first time on appeal.[4]

11. Nothing in the court's jury instructions can reasonably be construed to have placed any burden on the defendant to justify a life sentence. See *Ford v. State*, 257 Ga. 461 (2) (360 SE2d 258) (1987).

12. The jury found that the offense of murder (a) was committed while the defendant was engaged in the commission of the offense of armed robbery and (b) was outrageously and wantonly vile, horrible and inhuman in that it involved aggravated battery. See OCGA § 17-10-30 (b) (2) and (b) (7). The evidence supports these findings. OCGA § 17-10-35 (c) (2). See *Taylor v. State*, supra (13 c).

13. We do not find that the sentence of death was imposed as the result of passion, prejudice or other arbitrary factor, OCGA § 17-10-35 (c) (1), or that it is either excessive or disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur.*

### Appendix.

*Taylor v. State*, 261 Ga. 287 (404 SE2d 255) (1991); *Hall v. State*, 259 Ga. 412 (383 SE2d 128) (1989); *Miller v. State*, 259 Ga. 296 (380 SE2d 690) (1989); *Lee v. State*, 258 Ga. 82 (365 SE2d 99) (1988); *Frazier v. State*, 257 Ga. 690 (362 SE2d 351) (1987); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Jefferson v. State*, 256 Ga. 821 (353 SE2d 468) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Davis v. State*, 255 Ga. 598 (340 SE2d 869) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984); *Finney v. State*, 253 Ga. 346 (320 SE2d 147) (1984); *Spivey v. State*, 253 Ga. 187 (319 SE2d 420) (1984); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640)

---

[4] We note that the defendant was allowed to examine the state's file before trial. It is not likely that he was unaware of the letter.

(1983); *Rivers v. State,* 250 Ga. 288 (298 SE2d 10) (1982); *Jones v. State,* 249 Ga. 605 (293 SE2d 708) (1982); *Berryhill v. State,* 249 Ga. 442 (291 SE2d 685) (1982); *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1981); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974).

DECIDED JUNE 10, 1991.

*W. Dennis Mullis,* for appellant.

*James L. Wiggins,* District Attorney, *Timothy G. Vaughn, Cheryl L. Alford,* Assistant District Attorneys, *Michael J. Bowers,* Attorney General, *Thomas A. Cox, Jr.,* for appellee.