### S92P0476, S92P0477. TYREE v. THE STATE.
(418 SE2d 16)

CLARKE, Justice.

This is a case in which the death penalty has been imposed. Troy Edward Tyree was convicted in Tift County of murder, false imprisonment, and aggravated child molestation. Because the trial court erred by denying Tyree's motion for change of venue, we reverse.[1]

1. This case attracted considerable attention in Tift County, as evidenced by numerous articles published in the two local newspapers over a 14-month period. Local citizens were given not only factual information about the crime, but were introduced to "publicity that was either calculated to provoke hostility or reflective of an atmosphere of hostility." *Coleman v. Kemp*, 778 F2d 1487 (11th Cir. 1985). For example, following publication of a report that Tyree had attempted suicide in jail (and that in the sheriff's opinion Tyree was "faking it") the following letter to the editor was printed:

> I wish to say that I congratulate [the] sheriff . . . for speaking his mind concerning the so-called Tyree suicide attempt. I tend to agree with [the] sheriff . . . in that I also believe Troy Tyree is trying to build an insanity defense. However, and I hope you pass this along (to Tyree) if Troy Tyree really wishes to commit suicide I know of at least 40 people willing to absorb the expense of any item he chooses to use to get the job done. . . .
>
> I only wish that I had seen Troy carrying the lifeless body down the steps to the truck. Troy would not have the option of going to jail.

In an article based on an interview with the district attorney, one

---

[1] The crime occurred July 20, 1988. The trial began April 23, 1990 and ended May 4, 1990. A motion for new trial was filed and, after hearing, was denied on October 9, 1991. An amended order denying the motion for new trial was denied November 25, 1991. The case was docketed in this court on January 16, 1992. After extensions of time were granted to the parties, the case was argued orally on May 12, 1992.

newspaper reported:

> David Perry, district attorney for Tift County fully intends to kill Troy Edward Tyree.
>
> Perry intends to kill him just as surely as if he loaded a gun and set out to track Tyree like a wild animal — only, he intends to kill him, not with a gun, but with the legal process. . . .
>
> Although presently Perry is working on five murder cases in Tift County, he has not asked for the death penalty in any except the Tyree case. He says it takes considerable thought to make such a decision. In the end, Perry says he asks himself this question: "Would I do it (kill the defendant) personally with a gun?" In Tyree's case Perry's answer was: "Yes."

The same article reported that Tyree was a "recidivist," explaining that a recidivist is "a repeat offender." (It was elsewhere reported that Tyree had been convicted in 1984 of child molestation but that his conviction had been overturned by an appellate court "on a technicality.") The article went on to discuss the pending motion for change of venue, reporting that Perry opposed the motion because "there's an awful lot of expense and it causes problems"; to discuss defense strategy, noting that the defendant's intent to raise "the [insanity] defense which many Tift-County residents — and law enforcement officials — have predicted from the start of the case," had been confirmed by two recently filed defense motions; and to discuss other likely issues and strategies and the possibility of "endless appeals and re-trials later in the case."

In the next issue two weeks later, the same newspaper reported that the district attorney was "in a tizzy about what we had printed," and was now "99 percent certain that Tyree would . . . win his change of venue . . . motion."

In yet another article, it was reported that an alleged serial killer "and Troy Tyree are not strangers to one another; their lives have intersected: at murder." It was reported that Troy Tyree's brother had been a suspect in a murder case along with an alleged serial killer whose release on parole had been the subject of numerous previous articles. Further, Troy Tyree, the article alleged, had molested a girl in the family of the serial killer's father-in-law.

The media reported not only factual matters consistent with evidence ultimately presented at trial, but offered speculation about matters ultimately either having no basis in fact ("Is it [the victim's] blood? Was she beaten with the bat?), or not admissible at trial. In addition, the defendant's attempts to exclude evidence, to change

venue, and to receive state-funded psychiatric assistance were front-page news whose headlines include: "Murder suspect wants trial moved from town"; "Defense wants Tyree statement excluded"; "Ruling delayed on accused murderer's statement"; "D.A. wants Tyree psychiatric report"; "Judge won't drop Tyree charges"; "Tyree search ruled legal"; "Tyree Attacks Lawyer"; and "Local Papers Go to Court." Moreover, these attempts by the defendant's attorneys to represent him effectively were described in a manner disparaging of legal procedural safeguards in general and of Tyree and his attorneys in particular.

The jury voir dire examination must be examined in light of this extensive (given the size of the community) and prejudicial pre-trial publicity (some of which was generated by the district attorney and local law-enforcement officers). Almost all of the prospective jurors had prior knowledge of the case based on pre-trial publicity. In addition, not a few knew the victim's family, the defendant's family, or both. Approximately one-third of the prospective jurors were excused because of prejudice, bias or fixed opinion either on the issue of guilt or on the issue of sentence, as a consequence of their knowledge of the case or of the parties to the case. From this relatively high excusal rate, coupled with the prejudicial pre-trial publicity outlined above and the pervasive prior knowledge on the part of the venire as demonstrated by the voir dire examination, we conclude that the trial court erred by denying the defendant's motion for change of venue. *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991).

2. Four members of the actual trial jury were present or former clients of the district attorney. In addition, the wife of a fifth member of the jury had been represented by the district attorney. Only one of these five jurors disclosed that he had been represented by the district attorney (on a misdemeanor criminal charge when the district attorney had been in private practice). The other four failed to respond to defense voir dire questioning about whether there was any relationship between them and the prosecutor, notwithstanding that they or their spouses were clients of the Child Support Recovery Unit (CSRU) which the district attorney heads. Although we agree with the state that these jurors may not deliberately have intended to mislead the defense attorneys at the voir dire examination, nevertheless their answers were incorrect and the district attorney knew it.[2] This information should have been disclosed to the defense.

3. Tyree contends the district attorney should have recused himself because he had twice represented Tyree while in private practice, once in juvenile court on child molestation charges and once in civil

---

[2] There is no dispute that the prosecutor's jury cards contained this information.

litigation arising out of a motorcycle accident. The state responds that this issue was raised for the first time after trial and that Tyree has waived any objections he might have had. Since we reverse on other grounds, this issue is moot as to the original trial. If the defendant moves to recuse the district attorney from the retrial, the motion should be granted. *Clifton v. State*, 187 Ga. 502 (1) (2 SE2d 102) (1939). See also *Reaves v. State*, 574 S2d 105 (Fla. 1991).

4. The judgment below is reversed and the case remanded to the trial court. Since the evidence as to both the conviction and the sentence meets the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the defendant may be retried.

*Judgment reversed. All the Justices concur, except Hunt and Fletcher, JJ., who concur specially.*

HUNT, Justice, concurring specially.

I concur in the judgment only, because I agree that reversible error was committed by the district attorney's failure to inform the trial court and defense counsel of the connection between his office and a number of jurors, when those jurors had given erroneous or inaccurate responses to relevant defense questions. I also agree that the district attorney should have recused himself from the trial of this case, although his failure to do so would not cause reversal since Tyree offered no timely objection.

I disagree, however, that a change of venue was mandated under *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991). The new standard in *Jones* does not apply to cases tried before January 16, 1992. *Jones*, supra at 666, fn. 4. Under the rule which *was* in effect, the trial court's determination that the jurors could put aside pretrial knowledge of the case acquired from publicity about the crime and could render a fair verdict was not an abuse of discretion and was by no means "manifest error." *Mu'min v. Virginia*, ___ U. S. ___ (111 SC 1899, 1907, 114 LE2d 493) (1991).[3]

I am authorized to state that Justice Fletcher joins in this special concurrence.

ON MOTION FOR RECONSIDERATION.

The attorney general has filed a motion for reconsideration on two grounds.

1. First, the attorney general contends we should not apply the new standard for change of venue adopted prospectively in *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991), to this case. We agree.

---

[3] Attached to Tyree's venue motion were newspaper articles published between August and September of 1989. The most recent article predated the trial by at least six months.

However, this case must be reversed because, as in *Jones* itself, the pre-existing standards for change of venue require it.

2. Second, the attorney general argues for the first time on motion for reconsideration that the jurors at issue in Division 2 of our opinion were not "clients" of the district attorney. He relies on OCGA § 19-11-23 (b), which provides that when rendering assistance to the Department of Human Resources pursuant to OCGA § 19-11-23 (a), "the district attorney shall represent the department and the department shall be the sole client of the district attorney."

Subsection (b) was added to OCGA § 19-11-23 effective July 1, 1992 — more than two years after this case was tried. Whatever the future ramifications of subsection (b), there is no dispute that *these* jurors were regarded as "clients" of the Child Support Recovery Unit of the office of the district attorney, that through the CSRU they were "represented" by the district attorney, and that they had "hired" the office for a nominal payment in the expectation of receiving financial benefits.

The attorney general concedes in his motion for reconsideration that the district attorney should have disclosed this information to the defense. That is exactly what the majority opinion holds.

*The motion for reconsideration is denied.*

DECIDED JULY 8, 1992 —
RECONSIDERATION DENIED JULY 30, 1992.

*Lee W. Fitzpatrick, L. Clark Landrum, Clive A. Stafford-Smith,* for appellant.

*David E. Perry, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.