S94A1440. SOUTHEASTERN NEWSPAPERS CORPORATION
v. STATE OF GEORGIA et al.
(454 SE2d 452)

CARLEY, Justice.

Appellees Cedric Brown and Maurice Fleming are the defendants in a pending capital murder case. Joined by appellee State, they filed motions for closure of the pre-trial proceedings. The motions were opposed by appellant Southeastern Newspapers Corporation (Southeastern). The trial court granted closure only as to hearings on pre-trial motions addressing evidentiary matters, finding that extensive and prejudicial publicity created a severe danger of rendering it impossible to secure a fair and impartial jury and that highly sensitive and prejudicial matters might be disclosed to potential jurors. The trial court also noted that the death penalty was being sought, and that, therefore, extraordinary measures must be used to preserve appellees' right to a fair trial. Thus, the trial court determined that limited closure was necessary because the alternative remedies set forth in *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982) would be insufficient. All that occurs in the closed hearings was ordered to be transcribed and made available to the press and public when the jury has been sequestered. It is from these closure orders that Southeastern brings this appeal.

Georgia law is more protective of the concept of open courtrooms than federal law and generally requires that the criminal trial itself and all its consequent hearings on motions be open to the press and public

> unless the defendant or other movant is able to demonstrate on the record by "clear and convincing proof" that closing the hearing to the press and public is the only means by which a "clear and present danger" to his right to a fair trial or other asserted right can be avoided.

*Lumpkin*, supra at 579 (4). However, it is "less burdensome for the movant to justify the closure motion in a pre-trial hearing due to the absence of some alternatives at this stage of the proceedings." *Lumpkin*, supra at 580 (5), fn. 11. The primary alternative to closure that is unavailable at the pre-trial stage is sequestration of the jury. Other alternatives to closure at this stage either are unavailable or are rendered less effective in a death penalty case as a result of the prospect of interim review pursuant to OCGA § 17-10-35.1. After review-

ing the record, we hold that the trial court was authorized to find by "clear and convincing proof" that closing pre-trial evidentiary hearings to the press and public in this death penalty case is the only means by which a "clear and present danger" to the right of Brown and Fleming to a fair and public trial can be avoided. Furthermore, we find that the closure orders are "narrowly drawn" to avoid this danger to these rights. See *Lumpkin*, supra at 580 (6).

*Judgment affirmed. All the Justices concur, except Benham, P. J., Sears and Hunstein, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

Brown, Fleming, and Jenkins are under indictment in Liberty County on charges arising out of the armed robbery and death of a Riceboro man. The State is seeking the death penalty against the three defendants. On motion by Brown, Fleming, and the State, and based solely on the publication of two newspaper articles, the trial court closed all pretrial hearings on evidentiary motions filed by Brown and Fleming.[1] After reviewing these two articles, the majority holds that there was "clear and convincing proof" to support the trial court's determination that total closure of all pretrial evidentiary hearings was "the only means by which a 'clear and present danger' to the right of Brown and Fleming to a fair and public trial can be avoided." Because I find no such "clear and convincing proof" in the record that would overcome the presumption of openness of criminal proceedings and because closure here is not a proper alternative, I dissent.

The U. S. Supreme Court has recognized that the rights guaranteed by the First Amendment, in conjunction with the Fourteenth, share

> a common core purpose of assuring freedom of communication on matters relating to the functioning of government. Plainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted.

*Richmond Newspapers v. Virginia,* 448 U. S. 555, 575 (III) (A) (100 SC 2814, 65 LE2d 973) (1980). Hence, that Court has determined that "the press and public have a qualified First Amendment right to attend a criminal trial. [Cits.]" *Waller v. Georgia,* 467 U. S. 39, 44-45 (II) (A) (104 SC 2210, 81 LE2d 31) (1984). This qualified right of access to criminal proceedings applies to preliminary hearings. *Press-*

---

[1] The trial court's closure orders affected 36 of the 108 motions filed by Fleming and 27 of the 54 motions filed by Brown.

*Enterprise Co. v. Superior Court of California*, 478 U. S. 1, 13 (IV) (A) (106 SC 2735, 92 LE2d 1) (1986). See also *Ex parte Consolidated Pub. Co.*, 601 S2d 423 (Ala. 1992). The U. S. Supreme Court has made clear that while

> the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial . . . [s]uch circumstances will be rare . . . and the balance of interests must be struck with special care.

*Waller*, supra, 467 U. S. at 45. Accord *United States v. Cojab*, 996 F2d 1404, 1407 (2nd Cir. 1993). The "applicable rules" for making such a determination, id., are set forth in *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501 (104 SC 819, 78 LE2d 629) (1984):

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

Id. at 510 (II) (B). Accord *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982), setting forth comparable requirements and cautioning that compliance "cannot be avoided by agreement between the state and the defendant that the media and public should be barred from the hearing." Id. at 580 (6). Accord *Cojab*, supra at 1408.

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. [Cits.]

*Press-Enterprise*, supra, 478 U. S. at 14.

The proof adduced in this case to establish a "substantial probability" that the defendants' right to a fair trial will be prejudiced, id., consists of two newspaper articles, both dated April 27, 1994, and published in two newspapers, regarding the previous day's hearing on pretrial motions made by co-defendant Jenkins. A nineteen-sentence-long article in the Coastal Courier reported the large number of motions presented, accurately detailed the rulings made on certain of those motions, discussed the disposition of charges against

two others involved in the crimes, and mentioned the upcoming motions hearings for Brown and Fleming. The article also referenced a defense motion which sought "any statements of admission or confession," reported that the district attorney had responded that the state "had two statements from defendants pertaining to" the charged crime, and related that "[n]o information was given on who made the alleged statements." The Coastal Courier reporter who wrote the article stated without contradiction at a closure hearing that she had verified her article with the district attorney before it was published. The twenty-eight-sentence-long article in Savannah Morning News (owned by appellant) contained essentially the same information but characterized the two "statements" as "confessions" and inaccurately reflected that the trial judge and the district attorney had characterized the statements as confessions. The two articles do not reflect what the statements contain but merely report accurately that the statements were made to a police officer in Florida and a prison inmate. No other evidence was adduced.[2]

It is true that "[n]o right ranks higher than the right of the accused to a fair trial," *Press-Enterprise,* supra, 464 U. S. at 508 (II) (B), and that the burden of protecting the accused's right to a fair trial from the prejudicial effect of pretrial publicity falls squarely on trial courts. *Sheppard v. Maxwell,* 384 U. S. 333 (VII) (86 SC 1507, 16 LE2d 600) (1966). One need only look at the facts set forth in the Sam Sheppard murder case, *Sheppard,* supra, 384 U. S. at 338-349, the Lindbergh-baby kidnapping case, *State v. Hauptmann,* 180 A 809 (N.J. 1935), the Charles Manson murder case, *People v. Manson,* 61 Cal. App. 3d 102 (2nd Dist. 1976), and the publicity surrounding the trials of Manuel Noriega, William Kennedy Smith, and O. J. Simpson, to understand and appreciate the need for decisive, creative control by a trial court over a media increasingly prone to treat crime and its criminal justice aftermath as a form of popular entertainment. See, e.g., *News-Journal Corp. v. Foxman,* 939 F2d 1499 (11th Cir. 1991) (media barrage included two televised broadcasts depicting re-enactments of the murders); see also Note, Prejudicial Publicity Surrounding A Criminal Trial: What a trial court can do to ensure a fair trial in the face of a "Media Circus," 26 Suffolk U. L. Rev. 1063 (1992). See also *Sheppard,* supra, 384 U. S. at 362 (noting the increasing prevalence of prejudicial publicity). However, one need only com-

---

[2] Although defense counsel during both hearings made statements to the trial court regarding the extensive publicity the case had received which defense counsel stated would be presented to the court in support of motions for change of venue, no evidence was adduced at the hearings and the trial court reserved its ruling on the venue motions. Although defense motions for closure incorporated by reference exhibits to motions in limine and motions for change of venue, no such exhibits are attached to those motions.

pare the facts set forth in these cases to the facts in the case sub judice to recognize that the trial court was *not* presented with one of those "rare" exceptions to the rule of openness of criminal proceedings. *Press-Enterprise*, supra, 464 U. S. at 509.

The record in this case does not contain clear and convincing proof that a clear and present danger to defendants' right to fair trial existed that would justify closure of preliminary evidentiary hearings. The extent of the publicity consists of only two news articles; the content of the two news articles reflects basically accurate reporting, unembellished by speculation or emotionalism; neither article was prominently featured in the newspapers; neither article discussed or intimated any details set forth in the statements; there was no evidence as to the extent the articles were disseminated to the Liberty County population.[3] A review of this evidence reveals that the trial court's ruling that "this publicity, if permitted to continue, creates a severe danger that it will be impossible to secure a fair and impartial jury for [defendants] in this County," amounts to nothing more than a "naked assertion . . . insufficient to justify closure under *Press-Enterprise*, [464 U. S., supra] and *Press-Enterprise*, [478 U. S., supra]." *In re Memphis Pub. Co.*, 887 F2d 646, 648-649 (6th Cir. 1989). Accord *United States v. Simone*, 14 F3d 833 (IV) (3rd Cir. 1994).

To the extent these two news articles can be seen as justifying *any* response by the trial court, it was clearly inappropriate for total closure to be employed,[4] when there remain less drastic alternatives, such as change of venue and a thorough and searching voir dire of prospective jurors. *Lumpkin*, supra at 578, n. 8. However, as to the alternative remedy of a change of venue, I would note that from the state of the record in this particular appeal, a venue change would not be justified in that these two newspaper articles would not establish that the setting of the trial was inherently prejudicial. See *Gibson v. State*, 261 Ga. 313, 314 (2) (404 SE2d 781) (1991) (three news articles "[do] not amount to a 'barrage' of pretrial publicity" for change-of-venue presumption-of-prejudice purposes); see also *Chancey v. State*, 256 Ga. 415, 429 (5) (349 SE2d 717) (1986) (evaluating the impact of media publicity in light of such factors as the size of the community, the number of articles and their circulation, the prominence of the reports, and their content). As to the alternative remedy of a thorough and searching voir dire, I would note that prospective jurors

---

[3] The articles were circulated on a Wednesday. According to appellant newspaper's brief to this Court, its Monday-through-Friday total combined circulation in Liberty County is 2,501. Liberty County has a population of 52,745. See 1990 Census, OCGA Vol. 42, p. 1310.

[4] Although the trial court provided for release of the transcripts of the hearings once the jury is sequestered, I find this fails to cure the unjustified restriction on the right of access for the reasons set forth in *United States v. Simone*, supra at (V).

need not be "totally ignorant of the facts and issues involved" in a case to be qualified to serve on a jury. *Chancey,* supra at 425 (3). A thorough and searching voir dire would suffice to identify those prospective jurors who had " 'formed fixed opinions as to guilt or innocence of the accused from reading such newspaper articles,' [cit.]" id. at 429-430, thereby disqualifying them from serving on the jury. Accord *Manson,* supra at 191, noting that

> [t]he fact that a case receives enormous publicity does not by itself establish error nor does conceded "massive" publicity automatically translate into prejudice. . . . Exposure to publicity alone does not make it impossible for jurors to perform their obligation.

(Footnote omitted.)

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond News,* supra, 448 U. S. at 572. Hence, closure of a criminal proceeding should be the last resort of a trial court rather than the first response. Accord *Ex parte Birmingham News Co.,* 624 S2d 1117, 1135 (Ala. Cr. App. 1993) ("[a]ny court should be extremely reluctant to order the closure of any criminal proceeding"). Because the facts in this case do not justify closure of the pretrial evidentiary hearings to the public and press, I would reverse the trial court's ruling.

I am authorized to state that Presiding Justice Benham and Justice Sears join in this dissent.

DECIDED FEBRUARY 27, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995.

*Hull, Towill, Norman & Barrett, James B. Ellington, James W. Kimmell, Jr., Mark M. J. Webb, Robert L. Berry, Jr.,* for appellant.

*Dupont K. Cheney,* District Attorney, *Michael J. Bowers,* Attorney General, *Lloyd D. Murray, Jackson & Schiavone, G. Terry Jackson, Ray C. Smith, David C. Walker, Hal T. Peel, Jon G. Branan,* for appellees.

*Peter C. Canfield, Maxine Hardy, Ed S. Sell III, Gerald R. Weber, Jr., Stephen D. Porter, William H. Major, William B. Brown, James C. Rawls,* amici curiae.