S95A1272. ROCKDALE CITIZEN PUBLISHING COMPANY
v. STATE OF GEORGIA et al.
(463 SE2d 864)

THOMPSON, Justice.

The State is seeking the death penalty against Marvin Earl Turner, Jr., and two others, for the murder of Cleophus Ammons in Rockdale County. *The Rockdale Citizen,* the local daily newspaper, published approximately fifteen articles and at least one editorial concerning the crime and Turner's alleged involvement.

The articles were highly inflammatory: They set out details of Turner's alleged confession with regard to the kidnapping and "execution-style" slaying of Ammons, a grocery store clerk; they described the "torture" of Ammons with "red hot spoons" over a period of several hours; they reported that Turner and the others took turns shooting Ammons in the head through a pillow; they stated that Turner prayed for Ammons and for himself; they made references to other "gang" activities. Nearly all of these articles appeared on the front page of the paper.

*The Rockdale Citizen* is circulated widely in Rockdale County. Of the 18,337 households in the distribution area, 10,486 households subscribe to the newspaper, and it is estimated that every paper is read by three people.

Fearful that pretrial publicity would prejudice his right to a fair trial, Turner filed a motion to close the pretrial proceedings to the press and general public. The State agreed with Turner and likewise moved to close the pretrial hearings. The newspaper opposed the motions.

Following a hearing, the trial court granted the motions for closure. It decided that no one (except trial participants) would be allowed in the courtroom when a pretrial motion addressing evidentiary matters was being heard. It also restrained the parties, attorneys, wit-

nesses and court personnel from releasing information concerning what transpired at the pretrial proceedings. It ruled, however, that the hearings would be transcribed and made available to the press and public as soon as a jury is selected and sequestered.

The trial court based its decision on the following findings: 1. The State is seeking the death penalty against Turner. 2. The pretrial publicity is extensive and highly prejudicial. 3. If pretrial publicity of this nature were to continue, there is a severe danger that a fair and impartial jury could not be selected in Rockdale County. 4. The State is seeking the death penalty against Turner's co-defendants and their right to a fair trial must also be protected.

In making its decision, the trial court stated that it considered the alternative remedies set out in *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982), and found them to be "insufficient due to the unique circumstances of this case." The trial court concluded: "[N]o other measure will . . . protect the rights of the accused to a fair trial." The newspaper appeals.

1. While Georgia law dictates that all facets of a criminal trial should be and remain open to the press and public, *R. W. Page Corp. v. Lumpkin*, supra, closure can be ordered when the defendant's right to a fair trial is jeopardized by a clear and present danger. Id. at 579. See also *Waller v. Georgia*, 467 U. S. 39, 45 (104 SC 2210, 81 LE2d 31) (1984) (right to open trial must be balanced with right to fair trial). Of course, closure should only be ordered in rare circumstances, when no alternative course of action will protect a defendant's right to a fair trial. *Lumpkin*, supra at 579.

The burden is on the defendant, or another movant, to present clear and convincing proof of the need for closure. The burden can be carried more easily, however, where closure of a pretrial hearing is sought because, at that stage of the proceedings, some of the alternatives to closure[1] are absent. *Lumpkin*, supra at 580, fn. 11.

The trial court concluded that the pretrial publicity presented a clear and present danger to Turner's right to a fair trial. The proof adduced in this case could well support that conclusion. However, a closure order must fully articulate the alternatives to closure and the reasons why the alternatives would not protect the movant's rights. *Lumpkin*, supra at 580 (6). See also *Press-Enterprise Co. v. Superior Court of California*, 478 U. S. 1, 14 (106 SC 2735, 92 LE2d 1) (1986) (preliminary hearing can be closed only upon specific findings that defendant's right to fair trial will be prejudiced and reasonable alternatives to closure cannot protect defendant's rights). Here the trial

---

[1] *Lumpkin*, supra at 580, identifies the alternatives to closure as (1) jury sequestration, (2) change of venue, (3) postponement of the trial, (4) searching voir dire, (5) clear and emphatic instructions to the jury to consider only evidence presented in open court.

court stated, in a conclusory fashion, that it considered the alternatives to closure and found them to be insufficient under the circumstances of this case. The trial court's statement in this regard was not specific enough to enable us to determine that the closure order was entered properly. See *Press-Enterprise Co. v. Superior Court of California*, 464 U. S. 501, 510 (104 SC 819, 78 LE2d 629) (1984) (findings justifying closure must be sufficient for appellate review). Accordingly, we remand for consideration of the alternatives to closure. If the trial court again concludes that the alternatives would not afford the movants an adequate remedy, it shall fully articulate the reasons for its conclusion.

2. Under the closure order, a pretrial hearing that was devoted to a motion to recuse the trial judge was also closed. Because evidentiary matters pertaining to the prosecution's case were not going to be presented at the recusal hearing, this ruling was erroneous.

*Judgment vacated and remanded in part, and reversed in part. All the Justices concur, except Hunstein, J., who concurs specially.*

HUNSTEIN, Justice, concurring specially.

The trial court closed all pretrial evidentiary hearings in the murder trial of Marvin Earl Turner, Jr. to the press and public to avoid the dissemination of information that the trial court found presented a clear and present danger that Turner's right to a fair trial would be prejudiced. Although the record in this case establishes that the articles adduced in support of the closure motion consisted of accurate, responsible, non-inflammatory recountings of the investigation of the crime and subsequent arrest and prosecution of Turner and his co-defendants, the majority found that certain information published in appellant newspaper was "highly inflammatory" and focuses on this information as "proof adduced [that] could well support" a closure order upon remand. Majority opinion, p. 93. While I can concur in the majority's decision that the closure motion be remanded to the trial court for compliance with the explicit and exacting requirements of *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576 (292 SE2d 815) (1982), as opposed to the perfunctory, superficial analysis applied by the trial court, see *Southeastern Newspapers Corp. v. State of Ga.*, 265 Ga. 223 (454 SE2d 452) (1995), I cannot agree with the majority that the factually-accurate information disseminated by the press was "highly inflammatory," nor, under the circumstances present here, can I agree that mere publication of this information can support closure.

The victim in this case was killed in a dreadful, depraved manner; the facts of the murder are such as to invoke disgust and horror even when reported dispassionately. When the articles adduced in support of closure here are viewed under the standard established for a lesser alternative to closure, change of venue, *R. W. Page Corp. v.*

*Lumpkin,* supra at 580 (4),[2] it is readily apparent that the information imparted in the articles was not hysterical, speculative or emotionalistic, see, e.g., *Chancey v. State,* 256 Ga. 415 (5) (349 SE2d 717) (1986); *Kesler v. State,* 249 Ga. 462 (7) (291 SE2d 497) (1982), and was neither calculated to provoke hostility nor reflective of an atmosphere of hostility. See *Tyree v. State,* 262 Ga. 395 (1) (418 SE2d 16) (1992). Pretrial publicity that is not inflammatory enough to support the grant of a motion for change of venue will not alone support the grant of a motion for closure. See *R. W. Page Corp. v. Lumpkin,* supra. Even where a crime is as appalling as the one here, an accurate, neutral recounting of the facts should not qualify as "highly inflammatory" except in the rarest cases. This is especially valid given that the news media's former power over public opinion has been substantially eroded by the media's loss in credibility, including the public's belief in the accuracy and completeness of news coverage provided by both newspapers and television. See Newspaper Credibility Building Reader Trust, A National Study Commissioned by The American Society of Newspaper Editors (April 1985). Based on my review of the articles adduced at the closure motion, I cannot agree with the majority's characterization of the information disseminated in appellant newspaper's articles as "highly inflammatory." Compare *Tyree,* supra.

However, even assuming, arguendo, that the information set forth in the majority opinion was "highly inflammatory," I do not agree with the majority that its publication can justify barring press and public access to pretrial proceedings. That is because the record establishes this information had been disseminated to the public *by the district attorney herself* in a press statement announcing and explaining the decision to seek the death penalty. This press statement, and the article accurately detailing it, predated by almost a month the first article in the record discussing pretrial hearings open to the press. The record reflects that the "highly inflammatory" information published by appellant newspaper was not gained originally from media attendance at pretrial proceedings; hence, barring access to pretrial proceedings would not have prevented the dissemination of this information. The few news articles in the record which actually discuss pretrial proceedings contain matters that were consistent with or identical to the district attorney's prior pronouncements or could not be characterized as inflammatory.

The ability to avoid the dissemination of inflammatory matters

---

[2] This Court in *R. W. Page Corp. v. Lumpkin,* supra, rejected the federal court rule allowing judges to consider other remedies as alternatives to closure, holding that "a Georgia trial court judge shall *use*" other remedies, including change of venue, as alternatives to closure. Id. at 579-580 (4) and fn. 8.

that could prejudice a defendant's right to a fair trial does not reside solely in the media. Both the prosecution and the defense should exercise restraint and due caution in statements made for public dissemination. While DR 7-107 sets forth the standards for permissible and prohibited conduct of a lawyer with respect to trial publicity, EC 7-33; see also *Williams v. State*, 258 Ga. 305 (2) (A) (369 SE2d 232) (1988), counsel must recognize that factual situations will arise in which DR 7-107 will represent the de minimis standard and that counsel should conduct themselves in a manner so as to achieve that goal of our legal system, namely, "that each party shall have his case, criminal or civil, adjudicated by an impartial tribunal." EC 7-33.

In the case at bar, because the "highly inflammatory" information that the majority indicates as sufficient to justify closure was disseminated as a result of press coverage of the district attorney's pretrial public statements, barring the press and public from pretrial proceedings will not alleviate or eliminate whatever prejudice to Turner that might have been created by the district attorney's statements.[3] Because of this circumstance, the State and the defense now face a more difficult and perhaps insurmountable burden of establishing by "clear and convincing proof," *Lumpkin*, supra at 579 (4), that a "clear and present danger" currently exists to Turner's Sixth Amendment right to a fair trial that would justify the proposed closure, as opposed to the alternatives to closure. See id.; see also majority opinion, p. 93, fn. 1. As demonstrated by this case, a trial court, in ruling on a closure motion, cannot limit its consideration to the mere fact that certain information has been disseminated, but must also figure into its deliberations the source of that information, before determining whether closure of pretrial proceedings is the only step available to afford a defendant a fair trial.

DECIDED NOVEMBER 20, 1995 —
RECONSIDERATION DENIED DECEMBER 15, 1995.

*Heyman & Sizemore, William H. Major, William B. Brown,* for appellant.

*Cheryl F. Custer, District Attorney, Michael J. Bowers, Attorney General, Carla E. Brown, Peters, Townsend, Wilson & Roberts, R. Stephen Roberts, J. M. Raffauf,* for appellees.

*Cook, Noell, Tolley & Wiggins, Edward D. Tolley, Ronald E. Houser, Dow, Lohnes & Albertson, Peter C. Canfield, James A. Demetry, James W. Kimmell, Jr., Sean R. Smith, Gerald R. Weber,*

---

[3] In this regard, the record reveals that defense counsel sought a gag order to prevent any further statements by the district attorney.

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Alston & Bird, G. Conley Ingram, Ben F. Johnson III, Judson Graves, Daniel A. Kent, Arnall, Golden & Gregory, Robert L. Rothman, Powell, Goldstein, Frazer & Murphy, James C. Rawls, Anderson, Walker & Reichert, Walter H. Bush, Jr.,* amici curiae.