**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 3, 2016**

# In the Court of Appeals of Georgia

A16A0738. JACKSON v. THE STATE.

PETERSON, Judge.

The Spanish Inquisition and the English Court of Star Chamber shared a common practice: secret trials. *See In re Oliver*, 333 U.S. 257, 268-69 (68 S. Ct. 499, 92 LEd 682) (1948). To prevent the recurrence of similarly abusive institutions, English common law developed a requirement that trials be public. *Id.* at 268 & n.21. This mandate that trials be public is firmly established in both the U.S. Constitution and the Georgia Constitution. *See* U.S. Const. Amend. VI.; Const. of Ga.1983, Art. I, Sec. I, Par. XI (a). These constitutional commands do not depend on the nature of the crime charged, or on how certain we are of the accused's guilt. Only under very limited circumstances and by using very specific procedures can a trial court close part of a trial; failure to follow those procedures is error. And so it is here. Randy

Jackson was accused of heinous crimes against his own stepdaughter, and the evidence against him was overwhelming (and largely undisputed). Nevertheless, we must reverse his conviction because the trial court closed the courtroom for the testimony of the victim without following the procedures mandated by the Supreme Court of the United States to safeguard a defendant's right to a public trial.

Jackson was indicted in 2007 for sexual offenses against his stepdaughter, R. S., that began when R. S. was 11 years old. Prior to jury trial, the State filed a motion to close the courtroom during R. S.'s testimony.[1] The State specifically requested that the courtroom be closed to keep "members of [Jackson's] extended family, as well as any other persons or unnecessary courtroom personnel, out of the courtroom during the course of [R. S.'s] testimony," for the purpose of protecting R. S. and ensuring that her testimony was not influenced by any spectator.

At a November 2007 hearing on the State's motion, the State argued that R. S., who was then 16 years old, would have to testify about allegations that "are most personal violations, which are sexual in nature" and would be "very gruesome" because they involved her stepfather, Jackson. In support of its motion, the State

---

[1] The State also filed a motion to close the courtroom for the testimony of R. S.'s sister, but it later withdrew that request.

relied upon OCGA § 17-8-53 and § 17-8-54, and asked the court to close the courtroom to Jackson's family and to all non-essential courtroom personnel. Jackson objected to the closing of the courtroom and argued that there were no aggravating circumstances requiring the closing of the courtroom because R. S. would be almost 17 years old at the time of the trial and there were no allegations that the offenses were committed by force or violence. The trial court took the matter under advisement.

At a subsequent motions hearing, the trial court stated that it would grant the State's motion to close the courtroom. When the trial court asked the State to confirm whether it wanted the courtroom closed only to Jackson's family members, the State responded that it wanted the courtroom closed to any person who was not necessary to the trial, including family members. The court reiterated that it was granting the State's motion.

Jackson's trial took place in November 2007. When the State called R. S. to testify, it asked the trial court to clear the courtroom of all unnecessary personnel. The court then addressed the courtroom and stated:

> Ladies and gentlemen, those of you in the courtroom, I'm going to ask
> you to leave during the testimony of this witness, unless you are a law

3

enforcement officer or somehow or otherwise involved in the court system. The transcript notes reflect that the courtroom was then cleared and R. S. took the stand to testify.

R. S. was 16 years old at the time of the trial. R. S. testified that Jackson first made her touch his penis when she was 11, he began touching her breasts and genital area soon after, and then this touching led to daily sexual intercourse or oral sex by the time she was 12. R. S. resisted the touching and intercourse at first, but she feared getting hurt if she resisted and later began to accept the abuse as "normal" as it occurred "pretty much every day."

Jackson was convicted of incest, statutory rape, child molestation, and two counts of aggravated child molestation. The trial court sentenced Jackson to a total of 50 years to serve. Jackson appeals from the denial of his motion for new trial.[2]

---

[2] We note the substantial delay in resolving Jackson's motion for a new trial. Jackson timely filed his motion for new trial in December 2007, the trial court held a hearing on the motion for new trial in September 2011, and the court finally entered an order denying the motion in November 2015. There is no explanation for the almost four-year delay from the time Jackson filed his motion until the trial court held the September 2011 hearing. The reasons for the subsequent delay are equally unclear. Jackson obtained new counsel after his trial and new defense counsel asked the trial court to leave the record open at the September 2011 hearing in order to call trial counsel as a witness in support of Jackson's ineffective assistance of counsel's claims. But the record does not show that any additional hearings ever took place. Jackson represents that the trial court held additional hearings in May 2014 and

4

1. *The evidence was sufficient to support each of Jackson's convictions.*

Jackson does not challenge the sufficiency of the evidence to sustain his convictions. In fact, he concedes that the evidence was legally sufficient. Despite his concession, we nevertheless independently review the evidence and conclude that it was sufficient to support each of his convictions.

The victim, R. S., was Jackson's stepdaughter and testified that Jackson made her touch his penis when she was 11, he began touching her breasts and genital area soon after, this touching led to daily sexual intercourse, and then they began

October 2014, and the State accepts Jackson's representation. No transcripts of any additional hearings were provided, however, and according to the trial court clerk, no hearings actually occurred. Even if the hearings took place, there is no explanation for why it took almost three years for that to happen. We take this opportunity to, once again, remind the bench and the bar that

> this sort of extraordinary post-conviction, pre-appeal delay puts at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. It is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. That duty unfortunately was not fulfilled in this case.

*Robinson v. State*, 334 Ga. App. 646, 647 (1) (780 SE2d 86) (2015) (punctuation omitted).

performing oral sex on each other when she was 12. The testimony of a single witness is generally sufficient to establish a fact. *See* former OCGA § 24-4-8.[3] Based on the evidence that Jackson had sexual intercourse with his stepdaughter, the jury was authorized to find him guilty of incest. *See* OCGA § 16-6-22(a)(1) (a father commits the offense of incest when he engages in sexual intercourse with a stepchild). The victim testified that she was 12 years old when she began having daily sexual intercourse with Jackson, and her testimony was corroborated by Jackson's admission to committing the acts. Thus, the evidence was sufficient to sustain Jackson's conviction for statutory rape. *See* OCGA § 16-6-3 (a person commits the offense of statutory rape when he engages in sexual intercourse with a person who is under the age of 16 years and is not his spouse, but the unsupported testimony of a victim is insufficient to establish the offense); *Perdue v. State*, 250 Ga. App. 201, 202-03 (1) (551 SE2d 65) (2001) (the victim's testimony that she had sex with her stepfather, the defendant, beginning when she was 12 years old was corroborated by, among other things, the defendant's admissions, and therefore the evidence was sufficient to support the statutory rape convictions).

---

[3] Georgia's old Evidence Code applies here because this case was tried prior to January 1, 2013.

The victim also testified that Jackson sometimes put his finger inside her vagina when she was about 14 or 15 years old, and this was sufficient to support his conviction for child molestation. *See* OCGA § 16-6-4(a)(1) (a "person commits the offense of child molestation when such person . . . does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."). The victim also stated that Jackson performed oral sex on her and she performed oral sex on him, which was sufficient to support his two convictions for aggravated child molestation. *See* OCGA § 16-6-4(c) (the offense of aggravated child molestation occurs when a person commits an offense of child molestation that involves an act of sodomy).

2. *Jackson's conviction must be reversed because the trial court erred by closing the courtroom.*

Jackson argues that the trial court erred when it completely closed the courtroom to all non-essential courtroom personnel. Jackson argues that the (1) State did not advance an overriding interest to justify a closure, (2) the total closure was overbroad and unnecessary to protect any interest articulated by the State, and (3) the court failed to make specific factual findings to show that the closure was necessary

7

and narrowly tailored. We agree with Jackson's last argument, and reverse his conviction.

(a) *The closure of the courtroom was total.*

Before addressing the merits of Jackson's argument, we must consider the State's assertion that the courtroom was closed only to Jackson's family members and that Jackson failed to preserve any challenge to this partial closure because, although he objected to a complete closure, he did not specifically object to a partial closure. A partial closure occurs when some members of the public are permitted to attend, while a total courtroom closure involves exclusion of all members of the public. *See Bucci v. United States*, 662 F.3d 18, 23 (1st Cir. 2011); *Judd v. Haley*, 250 F.3d 1308, 1315 (11th Cir. 2001). This distinction matters because a when the courtroom is only partially closed to spectators, "the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny." *Delgado v. State*, 287 Ga. App. 273, 280 (2) (651 SE2d 201) (2007) (footnote omitted).

The State's assertion that courtroom was only partially closed is wholly unsupported by the record. The State asserts that it moved to remove only Jackson's family from the courtroom, not for a total closure. The State further argues that, because the court granted that motion, the record shows that the court only partially

8

closed the courtroom. But the record clearly shows that the State moved to close the entire courtroom. In its motion, the State specifically requested that the courtroom be closed to exclude Jackson's extended family, "as well as any other persons or unnecessary courtroom personnel[.]" The State reiterated this request at least twice. At a November 2007 hearing, the State asked for "closure of the courtroom of non-courtroom personnel." At a subsequent hearing, after the trial court took the matter under advisement, the trial court asked the State to confirm whether it wanted closure of the courtroom only to family members. In response, the State said:

> Your Honor, actually, the motion was to close the courtroom to any personnel who is not necessary to the trial, specifically, the family members, but also to anyone else who is not necessary during this.

Despite the State's clear and unequivocal statements to the trial court asking to remove everyone but essential courtroom personnel, the State baldly asserts on appeal that it sought to exclude only Jackson's family members. This is nonsense.

> Before R. S. took the stand, the trial court stated:

> Ladies and gentlemen, those of you in the courtroom, I'm going to ask you to leave during the testimony of this witness [R. S.], unless you are law enforcement or somehow or otherwise involved in the court system.

9

The transcript then shows that the courtroom was cleared. There is no doubt that the trial court excluded everyone in the courtroom except law enforcement, the parties, their counsel, and courtroom personnel.

Rather than admit that the courtroom was completely closed for R. S.'s testimony, the State doubles down and argues that members of the press are courtroom personnel. The State argues that, because the press is part of the courtroom personnel, it was inherent in the court's ruling that the press was not removed from the courtroom. If the State's first argument is nonsense – and it is – then this argument is nonsense on stilts. The record shows a total closure of the courtroom. The State has not identified – and we have not found – a shred of evidence that any member of the press was present for any part of the trial, much less was allowed to remain for R. S.'s testimony. We now turn to whether the trial court erred in ordering a total closure of the courtroom.

(b) *The trial court erred by closing the courtroom without making findings.*

The Sixth Amendment to the U.S. Constitution, applicable to the states, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" U.S. Const. Amend. VI.; *see also Kesler v. State,* 249 Ga. 462, 471 n. 5 (7) (291 SE2d 497) (1982). The Georgia

10

Constitution also guarantees criminal defendants the right to a public trial. Const. of Ga.1983, Art. I, Sec. I, Par. XI (a). Although of vital importance, a defendant's right to a public trial is not unlimited; it "may give way in certain cases to other rights or interests[.]" *Waller v. Georgia*, 467 U.S. 39, 45 (104 S. Ct. 2210, 81 LE2d 31) (1984); *see also Purvis v. State*, 288 Ga. 865, 869 (1) (708 SE2d 283) (2011). The circumstances in which a defendant's Sixth Amendment right may be limited are "rare" and "the balance of interests must be struck with special care." *Waller*, 467 U.S. at 45. And Georgia law is more protective of the right to a public trial than federal law. [*See Purvis*, 288 Ga. at 866 (1). As a result, trial courts of this state have "less discretion than [their] federal counterpart[s] because our constitution commands that open hearings are the nearly absolute rule and closed hearings the very rarest of exceptions." *R.W. Page Corp. v. Lumpkin*, 249 Ga. 576, 579 (4) (292 SE2d 815) (1982).]

The Supreme Court of the United States has articulated the framework governing courtroom closures. Before the trial court can exclude the public from any stage of a criminal trial,

> [t]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader

11

than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Presley v. Georgia*, 558 U.S. 209, 213-14 (130 S. Ct. 721, 175 LE2d 675) (2010) (*citing Waller*, 467 U.S. at 48); *see also Hunt*, 268 Ga. App. at 571 (1). To ensure that courtroom closure remains the rare exception rather than the rule, our Supreme Court has mandated that a movant seeking closure demonstrate by "clear and convincing proof" that "no means available other than closure of the hearing will serve to protect the right of the movant." *Lumpkin*, 249 Ga. at 580 (5).[4] "Clear and convincing proof necessarily involves concrete, tangible evidence that can be made part of and attached to the record to enable appellate review of a trial court's decision on an issue of constitutional magnitude." *Rockdale Citizen Pub. Co., Inc. v. State*, 266 Ga. 579, 580 (468 SE2d 764) (1996) (punctuation omitted). The improper closure of a courtroom is a structural error that must be remedied even without any showing of direct harm. *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010).

---

[4] In criminal cases, the movant need not be a formal party. *Lumpkin*, 266 Ga. at 580 (5).

The closure here did not comply with constitutional requirements because the trial court made no findings adequate to support the closure, including a consideration of reasonable alternatives. *Waller*, 467 U.S. at 45, 48; *Lumpkin*, 249 Ga. at 580 (6). *Waller* requires that the court enter a written order with findings to support the closure before excluding members of the public from a criminal hearing. *See Presley*, 558 U.S. at 213-14; *see also Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 14 (106 S. Ct. 2735, 92 LE2d 1) (1986) (a hearing can be closed only upon specific findings that the movant's interests will be prejudiced and that reasonable alternatives to closure cannot protect the movant's rights). Our Supreme Court has held that the trial court is required to enter an order making specific findings explaining why the closure is no "broader than necessary to protect" the movant's interest, including a full articulation of "the alternatives to closure considered by the trial court and the reason or reasons why such alternative would not afford the movant with an adequate remedy."[5] *Lumpkin*, 249 Ga. at 580 (6). "These requirements cannot be avoided[.]" *Id.*; *see also Stephens v. State*, 261 Ga. 467, 470

_____

[5] The State argues that Jackson did not propose any reasonable alternatives to the trial court. But a trial court is required to consider alternatives to closure even when they are not offered by the parties. *See Presley*, 558 U.S. at 214. In any case, the trial court erred by not entering written findings on this issue.

13

(7) (405 SE2d 483) (1991) (trial court failed to follow *Lumpkin* requirements when it did not make written findings of fact and conclusions of law). Because the trial court was required to make findings before closing a courtroom and did not, the closing of the courtroom was structural error. *Presley*, 558 U.S. at 212-16 (reversing because, even though the state court provided reasons for closing the courtroom, it erred by failing to articulate that it considered and rejected alternative measures); *Lumpkin*, 249 Ga. 580 (6).

In so deciding, we readily acknowledge that the State has a compelling interest in protecting minor victims of sex crimes from further trauma that would arise from testifying in public regarding the crimes against them. *See*, *e.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (agreeing with state that "safeguarding the physical and psychological well-being" of minor victims of sex crimes is a compelling interest that can warrant closing a courtroom on a case-by-case basis, although holding unconstitutional state statute mandating closure in all such cases). But the existence of such a compelling interest, while necessary, is not sufficient; the other prerequisites for closure must also be satisfied, and here they were not.

14

(c) *The remedy for the trial court's error is reversal of Jackson's convictions.*

The trial court's error requires reversal of Jackson's convictions, but we do not reach this conclusion lightly. A violation of a defendant's constitutional right to a public hearing does not automatically result in a new trial. In *Waller*, the seminal case on the issue of courtroom closures, the Supreme Court of the United States did not order a new trial after concluding that the defendant's Sixth Amendment rights were violated when the trial court closed the entire hearing on a motion to suppress. In fashioning a remedy that was "appropriate to the violation," the Supreme Court noted that it would be a windfall for the defendant, and not in the public interest, to order a new trial on account of a closed suppression hearing because it was possible that the same evidence would be suppressed. *Waller*, 467 U.S. at 50. The Supreme Court then determined that the appropriate remedy was to remand the case to the state court to decide what portions, if any, of the suppression hearing may be closed and then hold a new suppression hearing. The state court was to hold a new trial only if additional, material evidence was suppressed or if there was a material change in the positions of the parties. *Id.*

15

The principle that the remedy should be "appropriate to the violation" to correct a trial court error has been applied in other contexts. Appellate courts have remanded for *Jackson-Denno* hearings and for in-camera inspections by trial courts pursuant to *Brady* motions without requiring entirely new trials. *See also Cochran v. State*, 256 Ga. 113, 118-19 (a)-(b) (344 SE2d 402) (1986) (Weltner, J., concurring) (discussing correction of pre-trial errors without reversing convictions). In noting that an appellate court is not always required to choose between affirming or reversing a defendant's conviction, but that remand may be an appropriate solution, Justice Weltner explained,

> We may have stated too often to require citation that an accused is entitled to a fair trial, not a perfect one. It is not essential (indeed, it is subversive to justice) that a defendant should be accorded a new trial, with all its cost, delay and frustration, because of some deficiency – *unless* it has deprived him of a fair trial. In that regard, the remand concept has been healthy for criminal justice, bringing it closer to that reality which the public expects and demands from our judicial system.

*Id.* at 121 (d) (emphasis in original).

We have considered remand as an alternative in this case, but that remedy is not available here. In *Waller*, only the suppression hearing was closed, and the Supreme Court of the United States directed that a new suppression hearing be held

16

(in addition to requiring the trial court to make new findings regarding closure prior to the new hearing). But here, the court closed the courtroom during the most critical testimony of the trial itself. There is no way to remedy that error short of a new trial. As reluctant as we are to require the victim to testify again, we have no choice but to reverse Jackson's convictions. Nevertheless, the evidence was sufficient to support his convictions, he may be retried.[6]

*Judgment reversed and case remanded. Phipps, P. J., and Dillard, J., concur.*

---

[6] In light of our holding, we need not address Jackson's challenges to his sentences.