**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 2, 2023**

# In the Court of Appeals of Georgia

A22A1188. HICKS v. THE STATE.

MERCIER, Judge.

Following his convictions for kidnapping, rape, incest, a violation of the Georgia Street Gang Terrorism and Prevention Act, and two counts of child molestation, and the denial of his motion for new trial, Robert Lloyd Hicks filed this appeal. Hicks argues that the evidence presented at trial was insufficient to support his convictions for kidnapping and rape, and that the trial court erred by closing the courtroom, by allowing his prior conviction to go out with the jury and by not properly exercising its discretion in sentencing. Hicks also argues that he received ineffective assistance of counsel. We disagree and affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed the following. See *Rich v. State*, 307 Ga. 757, 757 (838 SE2d 255)

(2020). R. G., Hicks's step-daughter, testified that when she was eleven years old she lived with Hicks, her mother, grandparents, and siblings. On multiple occasions, Hicks carried R. G. from her bunkbed that she shared with her sister, and occasionally her grandmother, into his room or the bathroom, where he blindfolded her and touched her "in [her] private spot." Hicks also made R. G. touch him over his underwear. R. G. had previously witnessed Hicks push her mother to the ground and was scared of him.

While at school, R. G. was sent to the guidance counselor by her teacher for exhibiting "some type of anxiety in the classroom." R. G. told the counselor that she was having suicidal thoughts. She also reported that her mom and Hicks, had "whipped her" and that Hicks had taken from her bedroom, into the bathroom, and touched her. The guidance counselor reported the outcry to a social worker and the Department of Family and Children Services.

Evidence was presented at trial that Hicks is a member of a street gang. Lieutenant Robert Sasser of the Glynn County Police Department, who was admitted as an expert in gangs, testified that people can be "beat" or "sexed" into gang membership. Sasser opined that Hicks was a member of The Juggalos and The

Gangster Disciples. While Hicks had told police that he left the gang, Sasser testified that it was not possible to leave the gang; instead one could merely go inactive.

A. H., Hick's daughter, also lived with Hicks. When she was 13 years old, Hicks asked A. H. if she would like to join his gang and that the gang would provide protection for her. In order to join, she would need to be initiated, which the gang "headmasters" initially said would require A. H. to "have sex with four different guys at one time." A. H. testified that Hicks said that "he didn't like" the proposed initiation, so he requested a different initiation. Hicks told A. H. that the headmasters gave him another initiation for A. H., but he refused to divulge the details; instead, he told her that "when it happened we had to just go and there was no questions asked about it[.]" Further, if she changed her mind once they left, Hicks told A. H. that she would "have to face consequences" and that men "could come out and do whatever they wanted to [her], beat [her] or anything necessary like that." Hicks had previously hit A. H. and kicked her while she was on the ground, and she was scared of possible retaliation from him.

Then Hicks told A. H. that it was "time," took her outside next to a shed, and told her to pull her pants down. A. H. started crying and told Hicks that she was scared and that she was a virgin. Hicks proceeded to penetrate A. H. with his penis.

3

The State also presented the following other acts evidence:

Hicks's sister testified that when she was seven years old, and Hicks was twelve or thirteen years old, Hicks asked her if she wanted one of his key chains. Hicks told her he would give her a key chain if she put on a dress with no underwear, his sister did so, and then Hicks "tried to penetrate" her, but he was interrupted by a visit from a friend. Hicks's sister also testified that Hicks used to physically abuse her sister and their mother.

S. L. testified that six years prior to the trial, she met Hicks, and he forced her to have sex with him. She was afraid of Hicks because she had been told that "he was part of a gang." Hicks threatened to "hurt" S. L. if she told anyone what happened, but S. L.'s boyfriend reported the rape to the police. Hicks discovered that S. L. had told her boyfriend about the rape, and after confronting her, he "nicked the end of [S. L.'s] tongue with a razorblade" and "drop-kicked" her to the ground. Hicks also threatened to burn her house down with her friend's two-year old son inside.

S. S. testified that, 18 years prior to the trial, when she was 15 years old, Hicks, a friend of her boyfriend, lied and said that S. S.'s boyfriend was hurt and that she needed to go with Hicks. When S. S. expressed that she did not want to go with him, Hicks used a gun to force her. Hicks then took her to a shed, had non-consensual sex

4

with her, and said that if she told anyone he would "hurt [her] family." She reported the incident to the police, and Hicks was convicted of statutory rape.

Hicks's cousin, C. B., testified that when she was six years old and Hicks was ten years old, Hicks came into her bedroom at night and asked her if she wanted to play house. Hicks told C. B. that to play house they would "take [their] underwear down to [their] ankles and . . . roll around" and that C. B. "wasn't allowed to tell anyone because if [she] did [they] would get in trouble[.]" This made C. B. uncomfortable, so when Hicks spent the night at her house two years later, C. B. slept on the floor in her mother's bedroom. However, Hicks came into her mother's room at night and again asked C. B. to "play house." While they "played house" this time, Hicks put his penis inside C. B.

When C. B. was 19 years old, she told Hicks that girls at her work were threatening her. Hicks told C. B. that he would "protect her." He later woke her up and told her "that the sect king of his, in order to protect [her], needed proof that [she] was going to do what [she] was told," and he proceeded to videotape himself shaving her genitals. He also penetrated her with a sex toy and with his penis while recording the events. He told her that he was a member of the gang, "The Royals,"[1] and that if

---

[1] The Simon City Royals are a subset of The Gangster Disciples.

she did not "go all the way through it then they would come and find [her] and . . . beat [her.]" On a later occasion, he raped her again.

1. Hicks claims that the evidence was insufficient to support his convictions for kidnapping R. G., and raping A. H. "When evaluating the sufficiency of evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *Hyden v. State*, 308 Ga. 218, 219 (1) (839 SE2d 506) (2020) (citation and punctuation omitted).

(a) Hicks argues that his conviction for kidnapping should be reversed because the evidence was insufficient as to the element of asportation because his movement of R. G. was incidental. We disagree.

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). Slight movement of the victim shall be sufficient, provided that the movement is not merely incidental to the commission of another offense. See OCGA § 16-5-40 (b) (1). But "[m]ovement shall not be considered merely incidental to another offense if it: (A) [c]onceals or isolates the victim; (B) [m]akes the commission of the other offense substantially easier; (C)

6

[l]essens the risk of detection; or (D) [i]s for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2) (A) - (D).

The evidence at trial showed that R. G. shared a bunk bed with her sister and grandmother. By moving R. G. from the bedroom and into another room, Hicks concealed and isolated R. G. See OCGA § 16-5-40 (b) (2) (A). Further, it lessened the risk that Hicks's assault of R. G. would be witnessed. See OCGA § 16-5-40 (b) (2) (C). Therefore, the evidence was sufficient to support Hicks's conviction for kidnapping. See *Rich*, 307 Ga. at 760 (1) (b).

(b) Hicks argues that his rape conviction should be reversed because the evidence of Hicks engaging in sexual intercourse with his minor daughter "did not establish that these acts were committed by Mr. Hicks forcibly or against A. H.'s will." This argument lacks merit.

Pursuant to OCGA § 16-6-1 (a) (1), "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" "Carnal knowledge" is defined as "any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). "The term 'against her will' means without

consent. . . . The fact that a victim is under the age of consent[2] may supply the 'against her will' element in a forcible rape case since it shows that the victim is incapable of giving legal consent." *Wynn v. State*, 322 Ga. App. 66, 67 (1) (744 SE2d 64) (2013) (citation and punctuation omitted). Force can be shown through "acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." Id. (citation and punctuation omitted). Further, "[f]orce may be inferred from intimidation arising from the familial relationship and may be proved by direct or circumstantial evidence." *Oates v. State*, 355 Ga. App. 301, 303 (1) (844 SE2d 239) (2020).

After Hicks asked his 13-year-old daughter, A. H., if she wanted to join his gang, he told her that she would need to do an undescribed initiation, no questions asked. A. H., who was below the age of consent, testified that she cried, told Hicks she was scared, and he threatened her and then put his penis inside her vagina. A. H.'s testimony provided sufficient evidence that the sexual intercourse was "against her will" and that Hicks, her father, threatened that she could be hurt with bodily injury if she refused. See *Oates*, 355 Ga. App. at 303 (1); see also *Wynn*, 322 Ga. App. at 68

_____

[2] "The age of consent in Georgia is 16." *Chase v. State*, 285 Ga. 693, 696 (681 SE2d 116) (2009); see OCGA § 16-6-3 (a).

(1) ("The testimony of a single witness is generally sufficient to establish a fact.") (citation and punctuation omitted). As such, there was sufficient evidence to support Hicks's rape conviction.

2. Hicks argues that his convictions should be reversed because the trial court violated his constitutional right to a public trial by closing the courtroom during R. G.'s testimony. Prior to trial, the State filed a written motion requesting that the courtroom be cleared of non-essential personnel for R. G.'s trial testimony, pursuant to OCGA § 17-8-54. At trial, Hicks's counsel stated that he had no objection to the courtroom closure. The trial court required that all people, other than those from the newspaper, "the defense team," counsel, the court-reporter, sheriff, and R. G.'s step-mother, leave the courtroom for her testimony.

A criminal defendant enjoys the right to a public trial under both the Sixth Amendment to the United States Constitution and the Georgia Constitution. See U. S. Const. Amend. VI. and Ga. Const. of 1983, Art. I, Sec. I, Par. XI. However, a defendant's right to a public trial is not unlimited. See *Spikes v. State*, 353 Ga. App. 454, 456 (a) (838 SE2d 121) (2020). Under the rare circumstances where a defendant's right to a public trial is limited, "the balance of interests must be struck with special care." Id. (citation and punctuation omitted).

9

OCGA § 17-8-54 provides a limitation on a defendant's right to a public trial, stating that

> [i]n the trial of any criminal case, when any person under the age of 16 is testifying concerning any sexual offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.

 "As we have said before, OCGA § 17-8-54 is based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense." *Spires v. State*, 357 Ga. App. 440, 445 (2) (a) (850 SE2d 854) (2020) (citation and punctuation omitted). "We review the trial court's closure of a courtroom for an abuse of discretion." *Spikes*, 353 Ga. App. at 456 (a).

In our review of a courtroom closure, we first look to whether the courtroom closure was total or partial. See *Jackson v. State*, 339 Ga. App. 313, 316 (2) (a) (793 SE2d 201) (2016). A total courtroom closure occurs when no members of the public are allowed to attend the trial, whereas a partial closure occurs when some members of the public, such as the press, are permitted to attend. See id. at 316-317 (2) (a). "This distinction matters because when the courtroom is only partially closed to

10

spectators, the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny." Id. at 316 (2) (a) (citation and punctuation omitted). Here, the trial court specifically stated that "newspaper" was allowed to stay in the courtroom. As such, the courtroom closure was partial. Compare id. at 317 (2) (a) (total courtroom closure where trial court excused all but "law enforcement" and those involved in the "court system").

Here, R. G. was below the age of 16 at the time of her testimony, and the courtroom was closed only for her testimony. As such, the partial closure of the courtroom – which allowed members of the press, among others, to remain in the courtroom – was permitted under OCGA § 17-8-54 and did not violate Hicks's constitutional right to a public trial. See *Spires*, 357 Ga. App. at 445 (2) (a) (partial closure of courtroom under OCGA § 17-8-54, which allowed press to remain, did not violate defendant's constitutional right to public trial); *Chamberlain v. State*, 347 Ga. App. 775, 780 (2) (819 SE2d 303) (2018) (same); compare *Jackson*, 339 Ga. App. at 321 (2) (c) (reversal required for complete courtroom closure during testimony of witness who was 16 years old at the time of trial).

3. Hicks argues that he received constitutionally ineffective assistance of counsel because his attorney failed to object to the closure of the courtroom during

R. G.'s testimony. "To prevail on his ineffective assistance claim, [Hicks] must demonstrate both that counsel's performance was professionally deficient in failing to make the objections and that there is a reasonable probability that the verdict would have been more favorable to him if they had been made." *Rich*, 307 Ga. at 761 (3) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (A), 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984)).

Here, as discussed in Division 2, the trial court did not violate Hicks's constitutional right to a public trial by partially closing the courtroom pursuant to OCGA § 17-8-54. Moreover, Hicks has failed to show that he was prejudiced by his trial counsel's failure to object to the courtroom's partial closure during R. G.'s testimony, and we will not presume prejudice. See *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010) ("where, as here, the issue of a courtroom closure is raised in the context of an ineffective assistance of counsel claim, prejudice will not be presumed"). Hicks "has failed to demonstrate how the failure to object to partial closure of the courtroom when [R. G. ] testified resulted in harm. We therefore cannot find a reasonable probability that the outcome of the trial would have been different had spectators remained in the courtroom during such testimony." Id. (citation and

punctuation omitted). As such, Hicks's claim for ineffective assistance of counsel fails.

4. Hicks claims that the trial court erred by allowing the indictment for his prior conviction of statutory rape to go out with the jury during its deliberations.

Prior to trial, the State filed a notice to introduce evidence of a prior statutory rape conviction. At the time of Hicks's statutory rape indictment and conviction, the district attorney was Stephen D. Kelley. Kelley was the trial judge in the underlying trial, and Kelley's name was on the statutory rape indictment, in his prior role as district attorney.

At trial, when discussing what exhibits would go back to the jury room during deliberations, Hicks's counsel objected to the certified conviction going with the jury. The trial court stated "I don't know what the relevance really - - purpose of passing any of this writing back. There's already been testimony of this." Furthermore, the superior court's minutes specifically state that the prior conviction was not to go out to the jury.

"A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed." *Zellars v. State*, 314 Ga. App. 88, 89 (1) (723 SE2d 319) (2012)

13

(citation and punctuation omitted). Here, Hicks has failed to show that the exhibit relating to his prior conviction went out with the jury during deliberations, and due to his failure to show affirmatively by the record that the alleged error occurred, we must assume the judgment was correct and affirm the trial court. See generally id.; see also *Gant v. State*, 313 Ga. App. 329, 334 (1) (f) (721 SE2d 913) (2011) (where defendant failed to show on the record that objected to evidence went out with jury during deliberations, trial court's judgment is assumed to be correct).

5. Finally, Hicks contends that the trial court failed to properly exercise its discretion at sentencing. During the sentencing hearing, the State sought recidivist treatment due to Hicks's prior felony convictions, citing OCGA § 17-10-7 (c). The following colloquy took place:

> COURT: Does the – there's some new case law as far as – is it the State's position that – so the State's position is as to [OCGA § 17-10-7] this would be the fourth felony, that I have to – that the Court's hands are bound in the sense of that I have to give – whatever I give he has to serve. Is that correct?
>
> STATE: That's correct, Your Honor.
>
> COURT: But I don't believe – of course this case there was only – is the Court constrained to – to sentence to the maximum?

14

STATE: Yes, your honor. I believe that it's the State reading that Your Honor would be required to sentence him to the max and he would be required to serve that maximum.

Here, the trial court asked the State for its position on sentencing but the trial court did not state that it agreed with the State's position or that it lacked discretion. "Unless affirmative evidence shows otherwise, the trial court is presumed to have exercised its discretion in imposing sentence." *Paige v. State*, 277 Ga. App. 687, 688-689 (2) (627 SE2d 370) (2006) (citation and punctuation omitted); see also *Tuggle v. State*, 305 Ga. 624, 628 (4) (825 SE2d 221) (2019) ("Generally speaking, trial courts have the discretion to impose sentence within the parameters prescribed by a statute and if the sentence is within the statutory limits, the appellate courts will not review it.") (citation and punctuation omitted). As there is no affirmative evidence that shows that the trial court failed to exercise its discretion and the sentence was within the statutory limits, this claim fails.

*Judgment affirmed. Dillard, P. J., and Markle, J., concur*.