**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 28, 2024**

# In the Court of Appeals of Georgia

A24A1125. KING v. THE STATE.

MILLER, Presiding Judge.

In this criminal case, the trial court closed the courtroom to the public and the media during jury selection over defendant Ayla King's objection. The trial court also denied King's motion to dismiss the indictment based on an alleged violation of the right to a speedy trial under OCGA § 17-7-170, and King filed this appeal. We affirm the denial of the motion to dismiss because the trial was commenced within the required timeframe. Although we respect the trial court's rationale for not leaving the courtroom open, we are required to reverse on this fundamental judicial responsibility since the court did not leave the courtroom open to the public and the media during jury selection and did not enter a written order regarding the reasons for closure.

On August 29, 2013, an indictment was filed in Fulton County Superior Court against 61 co-defendants that charged King with one count of violating the Georgia Racketeer Influenced and Corrupt Organizations Act (OCGA § 16-4-4 (c)). King pled not guilty and then filed a demand for speedy trial pursuant to OCGA § 17-7-170 on October 30, 2023, during the September term of court.[1] OCGA § 17-7-170 (b) applies to noncapital cases and pertinently provides that "[i]f the defendant is not tried when the demand for speedy trial is made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant, the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." It is undisputed that there were juries impaneled and qualified to try King at all relevant times, and therefore the deadline under OCGA § 17-7-170 (b) was December 31, 2023, the end of the November term of court.

At the beginning of jury selection on December 11, 2023, prospective jurors were seated in every gallery row of the courtroom and filled the room to capacity. The

---

[1] The terms of court for the Fulton County Superior Court begin on the first Monday in January, March, May, July, September, and November. OCGA § 15-6-3 (3).

trial court stated that in light of the space limitations, it was broadcasting a live audio and video feed of the proceedings in another part of the courthouse, with the video focused on the judge, and that members of the public and the media could view this feed. King requested that the public and the media be allowed in the courtroom, arguing that a closed courtroom would violate King's constitutional right to a public trial. The trial court orally denied King's request, stating that the court: was concerned about pre-trial publicity, space in the courtroom, and safety and security related to jury selection; did not want the names or faces of potential jurors to be recorded or broadcast to the public; wanted to seat a fair and impartial jury within a reasonable period of time; and used the least restrictive means to grant access to the public under the extraordinary circumstances of this case, which involved the largest number of defendants in the history of Georgia. The trial court did not enter a written order regarding the courtroom closure. The voir dire phase of jury selection then proceeded without the public or the media present, although members of the public were allowed to enter the courtroom once some jurors had been dismissed and space opened up.

On December 13, 2023, the jury was selected and sworn in. The trial court then stated that opening statements would not occur until January 10, 2024, because the trial was expected to last three to four weeks, the court would be closed for several days over the holidays, jurors had holiday and travel plans, and the court wanted to conduct the trial without interruption.

On January 1, 2024, King filed a motion to dismiss the indictment based on an alleged violation of the right to a speedy trial under OCGA § 17-7-170, arguing that King had not been "tried" by the mere selection and swearing-in of the jury and that the long recess between jury selection and the presentation of evidence undermined the spirit of the statute. The trial court issued an order denying the motion to dismiss, concluding that it complied with the statute by impaneling and swearing in the jury, thereby commencing the trial, within the required timeframe. The court explained that requiring a trial to be completed rather than commenced before the statutory deadline would prove unworkable in many circumstances, and here the most prudent approach was to handle courthouse closures, avoid interruptions, and assuage juror anxiety based on holiday plans by briefly recessing after the jury was sworn in, identifying the reason for the delay, and giving the parties the date when the trial

would resume.[2] King then filed this appeal, challenging both the denial of the motion to dismiss and the closure of the courtroom during jury selection.

1. King argues that the trial court erred in denying the motion to dismiss for two reasons. First, swearing in the jury merely sets the stage for trial and does not mean that a defendant has been "tried" within the plain meaning of OCGA § 17-7-170 (b), and a case should only be considered to have been tried under the statute when a verdict has been rendered. Second, even if the statute could be satisfied by swearing in the jury, federal courts and other state courts have ruled that a significant delay between the start of trial and the presentation of evidence can violate the spirit of statutory speedy trial requirements, and acquittal is warranted here due to the prolonged recess between jury selection and further proceedings. Addressing each argument in turn, we conclude that the trial court did not err in denying the motion to dismiss.

(a) We first conclude that a defendant "is . . . tried" under OCGA § 17-7-170 (b) when the trial begins and the jury is selected and sworn in.

---

[2] King filed a motion for reconsideration, which the court denied.

5

"The interpretation of a statute is a question of law, which is reviewed de novo on appeal." (Citation omitted.) *Jenkins v. State*, 284 Ga. 642, 645 (2) (670 SE2d 425) (2008).

> In interpreting statutes, we presume that the General Assembly meant what it said and said what it meant. And so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question. Thus, we construe statutes in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence.

(Citations and punctuation omitted.) *Bowman v. State*, 315 Ga. 707, 710 (2) (884 SE2d 293) (2023). Indeed, "[a] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." (Citation omitted.) *Goldberg v. State*, 282 Ga. 542, 546 (651 SE2d 667) (2007).

"OCGA § 17-7-170 was enacted to implement the constitutional provision for a speedy trial. In the absence of a right to a speedy trial the accused might suffer uncertainty, emotional stress, and the economic strain of a pending prosecution indefinitely." (Citation omitted.) *Hubbard v. State*, 254 Ga. 694, 695 (333 SE2d 827) (1985). However, "in light of the extreme sanction for violations of the speedy trial statutes — dismissal of the case with prejudice and without a trial — these statutes are interpreted strictly against defendants who seek to invoke them. These are not penal laws, but rather laws that give defendants a benefit[.]" (Citation and punctuation omitted.) *Walker v. State*, 290 Ga. 696, 699 (2) (723 SE2d 894) (2012).

In construing OCGA § 17-7-170 (b), we look to this Court's construction of OCGA § 17-7-171 (b), which applies to capital cases and pertinently provides that "[i]f more than two regular terms of court are convened and adjourned after the term at which the demand for speedy trial is filed and the defendant is not given a trial, then the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment," so long as at both terms there were juries impaneled and qualified to try the defendant and the defendant was in court announcing ready for trial and requesting a trial. In *Bailey v. State*, 209 Ga. App. 390, 390-392 (1) (433 SE2d 610)

(1993), this Court held that a defendant is "given a trial," as that phrase is used in OCGA § 17-7-171 (b), when the trial begins and the jury is selected and sworn.[3] Indeed, a trial is considered to begin when the jury is selected and sworn. See *Martinez v. Illinois*, 572 U. S. 833, 840 (II) (A) (134 SCt 2070, 188 LE2d 1112) (2014) ("A jury trial begins, and jeopardy attaches, when the jury is sworn."); *Purnell v. State*, 355 Ga. App. 899, 901 (843 SE2d 637) (2020) ("[T]he time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn.") (citation and punctuation omitted).

In *Bailey*, supra, 209 Ga. App. at 391 (1), the statutory deadline was the end of the May term on July 13, 1992, and the trial began on July 10 when the jury was selected and sworn, but the trial did not conclude until the next week, during the next term. This Court rejected the defendant's argument that his trial was not timely under OCGA § 17-7-171 because it did not conclude before the end of the May term,

---

[3] In *Walker*, supra, 290 Ga. at 698-701 (2), the Supreme Court of Georgia disapproved the statement in *Bailey* that under OCGA § 17-7-171 the defendant had to be tried before the end of the second regular term of court following the term in which the demand was filed, clarifying that under the statute a defendant may be discharged and acquitted only if he is not given a trial after at least three full terms of court have expired since the term in which the demand was filed. This Court's holding in *Bailey*, however, remains good law.

explaining that the statute "requires only that the trial commence, not that it be concluded," within the specified time limit. Id. at 391-392 (1). This Court noted the requirement that the statute be strictly construed against defendants, emphasized that the statute does not specifically require that the trial be completed within the time limit, and stated that "[s]uch a requirement would be incongruous in that it would force trial courts to predict and strictly control the length of jury trials and it would encourage a defendant whose trial begins near the end of the statutory time limit to engage in improper delay tactics as a method of obtaining an acquittal by prolonging the trial past the end of the applicable term." Id.

While *Bailey* construed the phrase "is not given a trial" and here we are construing the phrase "is not tried," we do not discern any meaningful difference between the two phrases. If a defendant is "given a trial" upon the commencement of trial, then a defendant "is . . . tried" upon the commencement of trial. In other words, if the commencement of trial constitutes giving a defendant the event that we call a trial, the commencement of trial constitutes the action of trying a defendant.

Significantly, the three-pronged rationale of *Bailey* in construing OCGA § 17-7-171 (b) applies equally to our construction of OCGA § 17-7-170 (b). First, in light of

9

the extreme sanction for a violation of OCGA § 17-7-170 (b), the statute must be strictly construed against King as the defendant. *Walker*, supra, 290 Ga. at 699 (2). Second, OCGA § 17-7-170 (b) does not specifically require that the trial be completed within the stated time limit, while the very next subsection provides that "[a]ny demand for speedy trial filed pursuant to this Code section shall expire *at the conclusion of the trial* or upon the defendant entering a plea of guilty or nolo contendere." (Emphasis supplied.) OCGA § 17-7-170 (c). "Where the legislature uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended." (Citation and punctuation omitted.) *Pandora Franchising, LLC v. Kingdom Retail Group, LLLP*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016). Third, requiring a trial to be completed by the stated time limit would be entirely unworkable because it "would force trial courts to predict and strictly control the length of jury trials and . . . would encourage a defendant whose trial begins near the end of the statutory time limit to engage in improper delay tactics as a method of obtaining an acquittal by prolonging the trial past the end of the applicable term." *Bailey*, supra, 290 Ga. App. at 392 (1). "[W]e must guard against interpreting OCGA §§ 17–7–170 and 17–7–171 in such a manner as to sanction the

manipulation of trial and appellate processes by the defendant or the State." *Henry v. James*, 264 Ga. 527, 530 n.4 (1) (c) (449 SE2d 79) (1994); see also *Jones v. State*, 276 Ga. 171, 174-175 (575 SE2d 456) (2003) ("[O]ur legal system is not simply an elaborate game of 'Gotcha!' . . . The object of all legal investigation is the truth, and procedural rules are in place to further such goal in an orderly fashion.") (citation omitted).

We also note that this Court has indicated in dictum that a defendant "is . . . tried" under OCGA § 17-7-170 (b) once trial begins. In *Cates v. State*, 226 Ga. App. 519, 520 (486 SE2d 654) (1997), this Court cited *Bailey* and remarked that the State discharged its duty under OCGA § 17-7-170 (b) "by opening its case against defendant during the last court term in which defendant was required to be tried." And in *Cobb v. State*, 275 Ga. App. 554, 556 n.2 (2) (621 SE2d 548) (2005), this Court stated that "compliance with the speedy trial demand [under OCGA § 17-7-170] would have required that the trial commence either within the August or October court terms." Although not binding, these dictum provide further support for our conclusion that a defendant "is . . . tried" under OCGA § 17-7-170 (b) once the jury is selected and sworn and the trial begins. See *Morgan County v. Gay*, 352 Ga. App. 555, 564 n.7 (1)

(b) (i) (834 SE2d 576) (2019) ("Though not binding, when this Court finds dicta persuasive, we may adopt it.").

(b) Next, assuming without deciding that a significant delay between the commencement of trial and the presentation of evidence can violate the "spirit" of OCGA § 17-7-170 (b), we conclude that the trial court did not violate the spirit of the statute because the delay was fairly brief and occasioned by legitimate reasons.

While Georgia's appellate courts have not addressed this issue, federal courts and other state appellate courts have held that a trial court may not evade statutory speedy trial requirements by commencing a trial within the required period and then entering a long recess before the resumption of trial. See *United States v. Crane*, 776 F.2d 600, 603 (II) (A) (6th Cir. 1985); *United States v. Gonzalez*, 671 F.2d 441, 443-444 (II) (11th Cir. 1982); *State v. Amer*, 254 N. J. 405, 428 (III) (D) (N. J. Sup. Ct. 2023); *People v. Hajjaj*, 50 Cal. 4th 1184, 1196 (II) (241 P3d 828) (Cal. Sup. Ct. 2010). Here, the jury was impaneled and sworn on December 13, 2023, but the trial court announced that opening statements would not occur until January 10, 2024, because the trial would last three to four weeks and the court wanted the trial to proceed without the interruption of holiday court closures and jurors' holiday plans. While

such a delay should be avoided whenever possible, "[t]rial judges necessarily require a great deal of latitude in scheduling trials," *Garvey v. State*, 176 Ga. App. 268, 272 (3) (335 SE2d 640) (1985), and under the circumstances the delay of less than a month did not constitute a violation of the spirit of OCGA § 17-7-170 (b). See *Gonzalez*, supra, 671 F.2d at 444 (II) (district court did not violate the spirit of the federal Speedy Trial Act by scheduling voir dire on the last day allowed by the Act and then recessing for 11 days, at which time the jury was sworn and testimony begun, where the delay was partly due to previously scheduled judicial business that prevented the court from trying the case immediately and the court's desire to avoid splitting up the trial); cf. *United States v. Fox*, 788 F.2d 905, 908-909 (B) (2nd Cir. 1986) (Speedy Trial Act was violated where the district court delayed the evidentiary phase of the trial five-and-a-half months but failed to put any justification for doing so on the record).

2. King argues that the courtroom closure during the voir dire phase of jury selection violated King's right to a public trial under the federal and state constitutions.[4] The State responds that this Court lacks jurisdiction to consider King's

---

[4] The AJC and WSB-TV have filed an amicus brief in which they join in King's argument and also argue that the trial court ignored the requirements of Uniform Superior Court Rule 22 in excluding the media and the public from the courtroom. We thank these media outlets for their brief and their interest in the case.

13

challenge to the closure because the ruling is interlocutory and the case remains pending below. We conclude that we have jurisdiction to consider King's challenge and that the trial court erred in closing the courtroom to the public and the media without issuing a written order to that effect.

(a) First, we conclude that a defendant, such as King, who directly appeals from the denial of a motion to dismiss on statutory speedy trial grounds may challenge a prior ruling closing the courtroom to the public.

OCGA § 5-6-34 (a) (1) authorizes direct appeals from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below." "[A]s a general rule, when a party seeks to appeal a non-final order issued by a trial court before the case is fully adjudicated below, Georgia courts require adherence to the interlocutory procedures of OCGA § 5-6-34 (b) for appellate review." *Buckner-Webb v. State*, 314 Ga. 823, 827 (2) (a) (878 SE2d 481) (2022). However, in *Hubbard*, supra, 254 Ga. at 695, the Supreme Court of Georgia held that "the denial of a motion to dismiss based upon OCGA § 17-7-170 is directly appealable under OCGA § 5-6-34 (a)." This holding was based on the collateral order doctrine, which

> recognizes that a very small class of interlocutory rulings are effectively
> final in that they finally determine claims of right separable from, and

collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. Thus, an order that satisfies the requirements of the collateral order doctrine would be appealable because it comes within the terms of the relevant statutory right to appeal final judgments.

(Citations and punctuation omitted.) *Roberts v. State*, 309 Ga. 639, 639-640 & n.1 (1) (847 SE2d 541) (2020).

It is undisputed that under *Hubbard* we have jurisdiction to consider King's challenge to the denial of the motion to dismiss on statutory speedy trial grounds. OCGA § 5-6-34 (d) generally allows for pendent appellate jurisdiction and provides in pertinent part:

Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere.

This rule is based on "the principle of judicial economy" in that it discourages "the practice of appellate review by installment and seek[s] to encourage appellate determination of issues in a case in the fewest possible appellate procedures." *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980). Given the purpose of the rule and the fact that an appeal from the denial of a motion to dismiss on statutory speedy trial grounds is taken under OCGA § 5-6-34 (a), we conclude that King may challenge the courtroom closure in this appeal without regard to whether the closure is directly appealable on its own.[5]

(b) We further conclude that the trial court erred in closing the courtroom to the public and the media during jury selection's voir dire without issuing a written order to that effect.

"[O]pen courtrooms are a *sine qua non* of an effective and respected judicial system which, in turn, is one of the principal cornerstones of a free society." *R. W.*

---

[5] While the denial of a motion to dismiss on statutory speedy trial grounds is not specifically listed in OCGA § 5-6-34 (a), we note that the "general rule" articulated in OCGA § 5-6-34 (d) has been applied to allow review of otherwise non-appealable rulings in an appeal of an order granting summary judgment, even though the right to directly appeal an order granting summary judgment is found in OCGA § 9-11-56 (h) and not OCGA § 5-6-34. See *Headrick v. Stonepark of Dunwoody Unit Owners Assn., Inc.*, 331 Ga. App. 772, 774-775 (1) (a) (771 SE2d 382) (2015).

*Page Corp. v. Lumpkin*, 249 Ga. 576, 576 n.1 (292 SE2d 815) (1982). And "[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system." *Press-Enterprise Co. v. Superior Court of Cal., Riverside County*, 464 U. S. 501, 505 (II) (104 SCt 819) (1984). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." (Citation omitted.) *Waller v. Ga.*, 467 U. S. 39, 46 (II) (A) (104 SCt 2210, 81 LE2d 31) (1984).

The Sixth Amendment to the U. S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," while the Georgia Constitution provides that "[i]n criminal cases, the defendant shall have a public and speedy trial by an impartial jury." Ga. Const. of 1983, Art. I, Sec. I, Para. XI (a). The right to a public trial extends to the voir dire of prospective jurors. *Presley v. Ga.*, 558 U. S. 209, 213 (130 SCt 721, 175 LE2d 675) (2010). Further, "the press and public have a qualified First Amendment right to attend a criminal trial," which

extends "not only to the trial as such but also to . . . voir dire proceedings." *Waller*, supra, 467 U. S. at 44-45 (II) (A).

> Importantly, Georgia law regarding the public aspect of hearings in criminal cases is more protective of the concept of open courtrooms than federal law. Our state constitution point-blankly states that criminal trials *shall* be public. Although a defendant's right to a public trial is not unlimited, the circumstances in which a defendant's Sixth Amendment right may be limited are rare and the balance of interests must be struck with special care.

(Citations and punctuation omitted; emphasis in original.) *Spikes v. State*, 353 Ga. App. 454, 455-456 (a) (838 SE2d 121) (2020); see also *Jackson v. State*, 339 Ga. App. 313, 318 (2) (b) (793 SE2d 201) (2016) (because Georgia law "is more protective of the right to a public trial than federal law . . . , trial courts of this state have less discretion than their federal counterparts because our constitution commands that open hearings are the nearly absolute rule and closed hearings the very rarest of exceptions") (citations and punctuation omitted).

The general rule in Georgia is that a criminal trial "shall be open to the press and public on equal terms unless the defendant or other movant is able to demonstrate on the record by clear and convincing proof that closing the hearing to the press and

public is the only means by which a clear and present danger to his right to a fair trial or other asserted right can be avoided." (Punctuation omitted.) *Lumpkin*, supra, 249 Ga. at 579 (4). The U. S. Supreme Court has explained that

> [w]hile the accused does have a right to insist that the *voir dire* of the jurors be public, there are exceptions to this general rule. The right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care. *Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial:
>
> The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

(Citations and punctuation omitted.) *Presley*, supra, 558 U. S. at 213-214.

Significantly, this Court has explained that "*Waller* requires that the [trial] court enter a written order with findings to support the closure before excluding members of the public from a criminal hearing." *Jackson*, supra, 339 Ga. App. at 319 (2) (b). And the Supreme Court of Georgia has explained that a closure order "shall

19

only be entered pursuant to written findings of fact fully articulating the alternatives to closure considered by the trial court and the reason or reasons why such alternative would not afford the movant an adequate remedy." *Lumpkin*, supra, 249 Ga. at 580 (6); see also *Weaver v. Mass.*, 582 U. S. 286, 298 (II) (B) (137 SCt 1899, 198 LE2d 420) (2017) ("A public-trial violation can occur . . . simply because the trial court omits to make the proper findings before closing the courtroom, even if those findings might have been fully supported by the evidence."); *Rockdale Citizen Publishing Co. v. State*, 266 Ga. 92, 93 (1) (463 SE2d 864) (1995) ("[A] closure order must fully articulate the alternatives to closure and the reasons why the alternatives would not protect the movant's rights.").

The trial court here did not allow any members of the public or the media to be present in the courtroom during portions of voir dire. The Ninth Circuit recently explained that

> any failure to make the judge, counsel, defendant and jury subject to the public's eye (as well as its ear) undermines confidence in the proceeding. Therefore, the 'public trial' guaranteed by the Sixth Amendment is impaired by a rule that precludes the public from observing a trial in person, regardless whether the public has access to a transcript or audio stream.

(Citation omitted.) *United States v. Allen*, 34 F.4th 789, 796 (II) (A) (9th Cir. 2022). Thus, although the trial court offered the alternative of a live stream of the proceedings in another part of the courthouse, and although we are sympathetic to the court's orally stated reasons for the closure, the court was required to justify the complete exclusion of the public and the media from the courtroom by issuing a written order with specific findings in accordance with *Waller* and *Lumpkin*. See *Stephens v. State*, 261 Ga. 467, 470 (7) (405 SE2d 483) (1991) ("[T]he requirements outlined in *Lumpkin* [regarding a written order with specific findings] do apply to the situation in this case, where the court excludes the general public but permits the news media to remain.").

"The improper closure of a courtroom is a structural error that must be remedied even without any showing of direct harm." *Jackson*, supra, 339 Ga. App. at 319 (2) (b). We must therefore conclude that the trial court committed reversible error in excluding the public and the media from the courtroom during voir dire without issuing a written order to that effect, and that upon remand jury selection must be conducted in accordance with King's right to a public trial. See *Stephens*, supra, 261 Ga. at 469-470 (7) (reversing conviction because the trial court closed the trial to the

general public but did not make written findings of fact and conclusions of law regarding the closure); *Jackson*, supra, 339 Ga. App. at 319 n.5 (2) (b), 320-321 (2) (c) (because the trial court erred by not entering written findings regarding a courtroom closure during the defendant's trial, his convictions had to be reversed and the case remanded for retrial).

We recognize that "[o]nce a jury is impaneled and sworn, jeopardy attaches, and the defendant normally has a right to have her trial completed by that particular tribunal." *Harvey v. State*, 296 Ga. 823, 830 (2) (a) (770 SE2d 840) (2015). However, a mistrial may be declared prior to verdict — even over a defendant's objection — and a retrial may proceed where "there is a manifest necessity for doing so," meaning that "there is a high degree of necessity." (Citations and punctuation omitted.) Id. at 830-831 (2) (a). Such necessity may exist "where the ends of substantial justice cannot be attained without discontinuing the trial." (Citation and punctuation omitted.) *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003). Here, because the original jury has been sworn and jeopardy has attached, the trial court must first declare a mistrial in order for jury selection to begin anew. Given the improper closure of the courtroom during jury selection, the absence of remedies other than new jury selection to address

22

that impropriety, and the State's interest in prosecuting King, there is a high degree of necessity for a mistrial.

We also note that OCGA § 17-7-170 (e) provides that "[i]f the case in which a demand for speedy trial has been filed as provided in this Code section results in a mistrial, the case shall be tried at the next succeeding regular term of court." Thus, King must be tried at the next succeeding regular term of court upon the trial court's declaration of a mistrial.

For the foregoing reasons, we affirm the order denying King's motion to dismiss on statutory speedy trial grounds, but we reverse the failure to leave the courtroom open during voir dire without the required written order, and we remand for the trial court to declare a mistrial and to conduct jury selection in accordance with King's right to a public trial.[6]

*Judgment affirmed in part and reversed in part, and case remanded. Markle and Land, JJ., concur.*

---

[6] I am so very privileged and honored to have served the people of the State of Georgia on the Court of Appeals for the past 25 years. I would also like to thank my esteemed colleagues and fellow court personnel for making these past 25 years such a meaningful experience.